## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5658 | **DATE** | 1/17/2001 |
| **CASE TITLE** | FIDELITY NATIONAL TITLE INSURANCE vs. INTERCOUNTY NATIONAL TITLE INSURANCE, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] The motions to dismiss [36-1], [33-2], [26-1], [25-1], [24-1], [17-1] are granted in part and denied in part. Counts I, III, V, and IX are dismissed without prejudice. The motions are denied in all other respects. Defendants shall answer the surviving counts by January 26, 2001. ENTER MEMORANDUM OPINION AND ORDER.

*/s/ Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JAN 2 2 2001 | |
| | Notified counsel by telephone. | | date docketed | 85 |
| | Docketing to mail notices. | | cm | |
| | Mail AO 450 form. | FOR DOCKETING 01 JAN 19 PM 7:15 | docketing deputy initials | |
| X | Copy to judge/magistrate judge. | | 1/17/2001 | |
| | | | date mailed notice | |
| SB | courtroom deputy's initials | | jad | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FIDELITY NATIONAL TITLE INSURANCE )
COMPANY, )
)
) No. 00 C 5658
Plaintiff, )
) Suzanne B. Conlon, Judge
v. )
)
INTERCOUNTY NATIONAL TITLE )
INSURANCE COMPANY, et al. )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

Fidelity National Title Insurance Company of New York ("Fidelity") brings this action in its own capacity and as an assignee and subrogee of escrow beneficiaries under the terms of its assignments and insured closing letters for fraudulent concealment (Count I), breach of fiduciary duty (Count II), assisting in the breach of fiduciary duties (Count III), breach of escrow contract (Count IV), violation of the Illinois Consumer Fraud Act (Count V), violation of the Illinois Title Insurance Act (Count VI), unjust enrichment (Count VII), conversion (Count VIII), and fraudulent transfers (Count IX). Fidelity names the following defendants: Intercounty National Title Insurance Company ("INTIC"), Intercounty Title Company ("Intercounty Title"); INTIC Holding Company ("INTIC Holding") (collectively "Intercounty defendants" or "New Intercounty"); Stewart Title Company ("Stewart Title"), Stewart Title Guaranty Company ("Stewart Guaranty"), Stewart Information Services Corp. ("SISC") (collectively "Stewart"); Wholesale Real Estate Services, Inc. ("Wholesale" or "Old Intercounty"), ITI Enterprises, Inc. ("ITI"), Capjac Investments Group, Inc. ("Capjac"), Laurence W. Capriotti ("Capriotti"), Terry Cornell ("Cornell"), Jack L. Hargrove ("Hargrove"), Alan

L. Hurwick ("Hurwick"), Susan Peloza ("Peloza"), Michael Thyfault ("Thyfault"), James Wallwin ("Wallwin"), and Peter Waters ("Waters"). The Intercounty defendants, Stewart defendants, Waters, Capriotti, Hargrove, Hurwick,[1] Thyfault, Peloza, and Cornell (collectively "defendants") move to dismiss the complaint, pursuant to abstention and comity doctrines and Fed.R.Civ.P. 9(b); 12(b) 1, 6 and 7; 17(a); and 19.

## BACKGROUND

### I. The parties

For purposes of a motion to dismiss, the court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in favor of the nonmovant. *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000). Fidelity is a title insurance company.[2] From November 1995 to June 23, 2000, Fidelity acted as a reinsurer for INTIC, another title insurance company. During this time period, INTIC was the exclusive underwriter for New Intercounty. New Intercounty was INTIC's exclusive agent in issuing title insurance policies in Illinois. In addition, New Intercounty acted as an escrow agent by holding funds for various real estate transactions. INTIC Holding has owned all of INTIC's and New Intercounty's stock from 1995 to the present.

Stewart acted as the exclusive underwriter for Title Company of Illinois ("Old Intercounty") until 1995. Old Intercounty is now known as Wholesale. Between 1984 and 1995, Old Intercounty was the exclusive title insurance agent for Stewart and acted as an escrow agent. In addition to its title policy, Stewart Guaranty issued "closing protection letters." These letters insured parties to Old

---

[1] Hurwick adopts Hargrove's motion to dismiss.

[2] Title insurers are regulated by the Illinois Department of Financial Institutions under the Title Insurance Act, 215 ILCS 155/1 *et seq.*

2

Intercounty's escrow accounts against loss caused by Old Intercounty's failure to follow real estate closing instructions. Stewart also owned 20% of Old Intercounty's stock and held two seats on its board of directors for a period of time. As a result of the business relationship between Stewart and Old Intercounty, Stewart had access to periodic reports on Old Intercounty's finances.

ITI provided staffing and services for INTIC and new Intercounty and controlled New Intercounty's escrow accounts. Capjac was a real estate investment company. Capriotti was president and director of Old Intercounty and president of ITI. He owned 40% of Old Intercounty's stock and 50% of ITI's stock. Cornell was vice-president of Old Intercounty and later became vice-president and secretary of INTIC and New Intercounty. He owned 49% of INTIC Holding's stock. Hargrove was Old Intercounty's executive vice-president and chairman of Old Intercounty's and ITI's board of directors. He owned 40% of Old Intercounty's stock and 50% of ITI's stock. Hurwick acted as director for Old Intercounty. For a period of time, he was also Old Intercounty's treasurer and chief financial officer. Peloza was executive vice-president, secretary, and director of Old Intercounty, president of INTIC, and vice-president of New Intercounty. She owned 51% of INTIC Holding's stock. Thyfault, Wallwin, and Waters served as officers or directors of Old Intercounty. In addition, Waters was a senior vice-president and Midwest regional manager of Stewart Guaranty.

**II. The escrow account transactions**

Stewart and Old Intercounty expanded beyond their agency relationship in 1986. They participated in the "mortgage defeasance program." This program enabled borrowers to convey title or refinance commercial loans without being subject to lender fees for pre-payment. The buyer's funds that ordinarily would go to pay off the existing mortgage were instead placed in escrow with an Old Intercounty subsidiary, Intercounty Defeasance Company ("IDC"). IDC invested the funds in high-

3

yield junk bonds and continue to pay down the loan. Stewart would then issue a clean title policy to a new lender. The plan was to use the profits from the junk bonds to pay down existing mortgages. When the junk bond market collapsed, the mortgage defeasance program experienced financial difficulties.

As a result of Old Intercounty's financial difficulties, Fidelity contends Capriotti and Hargrove arranged for another company they owned to transfer tens of millions of dollars from its trust accounts into Old Intercounty escrow account, and thus commingled funds. Fidelity further contends Old Intercounty's management used funds in the company's escrow account for personal expenditures and the company's operating expenses. Old Intercounty's officers allegedly altered accounting records and created false reports to conceal these fund transfers. As of 1993, Old Intercounty's escrow accounts had at least a $7 million deficiency.

In 1995, Stewart entered into a restructuring agreement with Old Intercounty, Capriotti, and Hargrove. The agreement ended the relationship between Stewart and Old Intercounty. A draft of the agreement showed that Old Intercounty's escrow accounts had a $6 million deficiency. Fidelity maintains Hargrove and Capriotti transferred $4 million from other trust accounts to Old Intercounty's escrow account on April 20, 1995 to fund real estate closings. The agreement also required Old Intercounty to pay Stewart for unremitted premiums, agent claim billings, and losses incurred in the mortgage defeasance program. To meet this obligation, Capriotti and Hargrove allegedly transferred an additional $6 million to Old Intercounty from other trust accounts they controlled. Stewart had access to Old Intercounty's financial records throughout the course of these fund transfers.

The restructuring agreement provided for the formation of a new title company to act as an underwriter. INTIC was formed to replace Stewart and act as the new underwriter. New Intercounty

was formed a few months later to act as the title and escrow agency. Peloza and Corell were named as the owners of New Intercounty. Fidelity maintains wrongful transfers of funds from Intercounty's escrow accounts continued under this arrangement. The funds were transferred to Stewart, Capriotti, Hargrove, Capjac, and New Intercounty's operating costs account.

The restructuring agreement gave INTIC very little authority and few assets. Moreover, INTIC did not have regulatory approval to issue title policies in Illinois. In order to obtain regulatory approval, Fidelity was hired on September 14, 1995 to reinsure INTIC's title policies and to issue closing protection letters. Fidelity contends defendants never informed Fidelity management about escrow deficiencies or New Intercounty's practice of transferring funds between the escrow accounts and other accounts.

In spring of 2000, Fidelity allegedly discovered New Intercounty's escrow accounts had a multi-million dollar deficit. As a result, Fidelity terminated its reinsurance agreement and notified the Department of Financial Institutions of its findings. Fidelity then entered into an agreement with INTIC and New Intercounty, which gave Fidelity "authority to control, monitor and oversee all aspects and functions of all escrow accounts of Intercounty." The Department of Financial Institutions shut down INTIC on June 23, 2000. Fidelity maintains hundreds of New Intercounty's customers and their lenders received checks that failed to clear for insufficient funds. On June 26, 2000, the Department of Financial Institutions appointed Fidelity as trustee of INTIC. Fidelity was responsible for assuring the proper distribution of New Intercounty's remaining escrow funds. Fidelity claims it spent $35 million reimbursing New Intercounty customers who were adversely affected by Intercounty's escrow deficiency. These customers assigned Fidelity all of their right, title, and interest in their claims to the escrowed funds.

## III. Other pending litigation

On April 14, 2000, the Illinois Commissioner of Banks and Real Estate took control of Independent Trust Corporation ("InTrust") and placed it in receivership. By order of the Illinois Commissioner, the receiver was given the responsibility of protecting all of InTrust's assets, including its legal claims. The order also provided that no claim against any InTrust asset could be pursued without order of the Circuit Court of Cook County. On June 1, 2000, the receiver sued Capriotti, Hargrove, and ITI on behalf of InTrust, seeking to recover approximately $68 million allegedly misappropriated from InTrust's accounts.

In August 2000, Hargrove and ITI sued Fidelity and New Intercounty in the Circuit Court of Cook County. Hargrove alleges Fidelity is liable for breach of contract after repeatedly purporting to terminate its reinsurance agreement with INTIC, despite its promises to maintain the reinsurance agreement.

In September 2000, New Intercounty and others filed a lawsuit in the state court against Fidelity. They claim Fidelity is liable for violations of the Illinois Antitrust Act, breach of the reinsurance agreement, breach of fiduciary duty, tortious interference with contract, fraud, negligent misrepresentation, and defamation.

## DISCUSSION

### I. Motion to dismiss standard

In ruling on a motion to dismiss, the court considers "whether relief is possible under any set of facts that could be established consistent with the allegations." *Pokuta v. Trans World Airlines, Inc.*, 191 F.3d 834, 839 (7th Cir. 1999) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). A claim may be dismissed only if there is no set of facts that would entitle the plaintiff to relief based on the

allegations in the complaint. *Vonderohe v. B & S of Fort Wayne, Inc.*, 36 F.Supp.2d 1079, 1081 (7th Cir. 1999). A motion to dismiss tests the sufficiency of the complaint, not its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).

**II.    Rule 9(b)**

Stewart, Intercounty defendants, Thyfault, Hargrove, Hurwick, Waters, Peloza, and Cornell move to dismiss for failure to plead fraud with the requisite particularity, pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. Counts I, III, V and IX are implicated in this motion.[3] Rule 9(b) requires plaintiffs to state with particularity the circumstances on which they base their fraud claims. *Uni Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 924 (7th Cir. 1992). Specifically, plaintiffs must identify (1) who made the misrepresentation; (2) the time, place, and content of the misrepresentation; and (3) the method used to communicate the misrepresentation. *Id.* at 923. Rule 9(b) is meant to ensure defendants receive fair notice. *Haroco, Inc. v. American National Bank and Trust Co. of Chicago*, 747 F.2d 384, 405 (7th Cir. 1984).

Fidelity has not satisfied 9(b)'s requirements for Counts I, III, V, and IX. The complaint repeatedly lumps defendants together in its fraud allegations. The specific acts allegedly committed by each defendant are unclear. Furthermore, dollar amounts and relevant dates are not specified. Less specificity is required in cases where numerous transactions occur over a period of time. *P & P Marketing, Inc. v. Ditton*, 746 F.Supp. 1354, 1362-3 (N.D. Ill. 1990). However, there is no justification for generalizations such as "from 1986 through 1995" and "the defendants caused millions

---

[3]Rule 9(b) applies when an alleged breach of a fiduciary duty is based on fraud. *See Thornton v. Evans*, 692 F.2d 1064, 1083 (7th Cir. 1983). Claims brought under the Illinois Consumer Fraud Act are also subject to the heightened pleading requirements of Rule 9(b). *See e.g., Gallagher Corp. v. Mass. Mut. Life Ins. Co.*, 940 F.Supp. 176, 180 (N.D. Ill. 1996).

7

of dollars to be fraudulently transferred." Cmplt. ¶¶ 32-34. The named defendants were not given fair notice of the allegations against them. Accordingly, Counts I, III, V, and IX must be dismissed.[4]

## III. Rule 12(b)(6)

All defendants move to dismiss for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Each of the individual arguments for dismissal on Rule 12(b)(6) grounds are discussed below.

### A. Stewart's liability to the escrow parties

Stewart claims each count brought by Fidelity as a subrogee must be dismissed because the escrow parties had no contacts or relationship with Stewart. Privity is not required to assert tort claims under Illinois law. *Stein v. D'Amico,* 1989 WL 91874, at *2 (N.D. Ill. 1989). Fidelity has alleged Stewart knowingly accepted funds from the escrow accounts. "Knowledge to a substantial certainty constitutes intent in the eyes of the law [and] knowledge that future investors will not be paid is sufficient to establish his actual intent to defraud them." *In re Randy,* 189 B.R. 425, 438 (N.D. Ill. 1995). Read in a light most favorable to Fidelity, its allegations state a cause of action against Stewart.

### B. Unjust Enrichment

Fidelity alleges INTIC, Intercounty Title, Stewart, Old Intercounty, Capriotti, Hargrove, and Capjac have been unjustly enriched because the escrow deficiency was passed on to Fidelity in 1995. Stewart and other defendants contend Fidelity fails to state a claim for unjust enrichment. Stewart points to the fact that Fidelity could have easily audited both the Old and New Intercounty accounts

---

[4] All other arguments pertaining to these counts are moot.

prior to issuing closing protection letters in 1995.[5] This argument address the merits rather than the sufficiency of the allegations. Stewart further contends there is nothing unjust about having to pay escrow obligations to previous insureds. This argument ignores Fidelity's contention that it would not have had to pay the insureds absent deceitful behavior. Intercounty defendants contend there are no allegations in the complaint to justify an unjust enrichment charge against them. Fidelity alleges these defendants stole money from escrow accounts while intentionally deceiving their customers and Fidelity. Cmplt. at ¶¶ 4, 56-70. Fidelity has adequately plead all defendants have benefitted from funds of which they were not the rightful owners.

### C. Illinois Title Insurance Act

Stewart argues neither Fidelity nor the escrow beneficiaries have a claim under the Illinois Title Insurance Act because there is no privity. This argument fails because privity is not an element under the Act. Section 21 provides, "Any person or persons who violate the prohibitions or limitations of subsection (a) of Section 21 of this Act shall be liable to the person or persons charged for the settlement service involved in the violation for actual damages." 215 ILCS 155/25(a). *See also Lawyers Title Ins. Corp. v. Dearborn Title Corp.*, 904 F.Supp. 818, 822 (N.D. Ill. 1995) ("neither the language of the statute nor the case law limits those who may seek relief").

### D. Breach of the escrow contract

Peloza, Cornell, INTIC, and INTIC Holding contend Fidelity's complaint fails to allege any facts that would establish their liability for breach of an escrow contract. Fidelity's breach of escrow contract claim against these defendants is based on a piercing the corporate veil theory, which would

---

[5]Stewart's also contends the unjust enrichment claim cannot be sustained because Fidelity is primarily liable. For the reasons discussed in Section V below, Fidelity will not be considered primarily liable.

9

confer liability for any breaches by Intercounty Title. Two requirements must be met for piercing the corporate veil under Illinois law: "First, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual or other corporation no longer exist; and second, circumstances must be such that adherence to the fiction of a separate corporate existence would sanction a fraud or promote injustice." *Hystro Prods, Inc. v. MNP Corp.*, 18 F.3d 1384-89 (7th Cir. 1994). Fidelity makes numerous allegations in its complaint suggesting defendants used assets of Old and New Intercounty for their own personal benefit and created sham businesses to protect themselves from liability. Cmplt. at ¶¶ 4, 16, 19, 46, 55-57. Viewed in a light most favorable to Fidelity, these allegations justify piercing the corporate veil.

### E. Conversion

Stewart and the Intercounty defendants contend Fidelity fails to properly state a claim for conversion because the funds at issue are unidentifiable. However, failure to segregate funds do not render funds unidentifiable. As long as the money was used for a specific purpose and can be traced to a specific source, a conversion claim can stand. *See e.g., Roderick Dev. Inv. Co., Inc. v. Community Bank of Edgewater*, 282 Ill.App.3d 1052, 1063 (1st Dist. 1996). Fidelity's allegations are sufficient to meet this requirement.

### IV.   Rule 12(b)(7) and Rule 19

Capriotti, Hargrove, and Hurwick move to dismiss for failure to join InTrust, pursuant to Rule 12(b)(7) and Rule 19 of the Federal Rules of Civil Procedure. Rule 19 requires a 2-step inquiry. The court must first determine whether InTrust should be joined in this action. If the answer is affirmative and InTrust cannot be joined, the court must decide whether InTrust is indispensable. If the absent party is indispensable, the case must be dismissed pursuant to Rule 12(b)(7). *Thomas v. United States*,

10

189 F.3d 662, 667 (7th Cir. 1999). The following factors determine whether a party should be joined: (1) whether the parties can obtain complete relief without joinder; (2) whether the absent party will be unable to protect its interest in the subject-matter of the suit; and (3) whether there is a substantial risk that the existing parties will be subject to multiple or inconsistent obligations unless the absent person joins the suit. Fed.R.Civ.P. 19(a); *Id.*

Capriotti and Hargrove contend InTrust is a necessary party because (1) both the InTrust receiver and Fidelity seek the funds allegedly missing from New Intercounty and (2) Capriotti may be subject to inconsistent or double obligations under these actions. Despite Capriotti's and Hargrove's contentions, it is clear the two cases involve different types of New Intercounty escrow accounts held by different companies. Capriotti and Hargrove can be held liable in state court for removing funds from InTrust's retirement fund escrow accounts, as well as for removing different funds from Fidelity's real estate escrow accounts in this court. Therefore, complete relief is possible in both cases. Similarly, InTrust's interests will not be affected by the judgment in this case, and there is no risk of the defendants being subjected to inconsistent or double obligations. There is no reason InTrust should be a party in this action.

## V.  Rule 17 and Subrogation

Capriotti, Hargrove, and Hurwick move to dismiss for failure to prosecute by the real party in interest, pursuant to Rule 17 of the Federal Rules of Civil Procedure. Rule 17 requires state law to control in determining the real party in interest. *Frank v. Hadesman and Frank, Inc.*, 83 F.3d 158, 159 (7th Cir. 1996). An insurer will only be deemed the real party in interest if there has been a complete subrogation of the insured's rights to the insurer. *Indiana Ins. Co. v. Vlaicevic*, 1992 WL 191125, at *2 (N.D. Ill. Aug. 5, 1992). In Illinois, complaints must contain specific allegations as to how the

11

actual rights of subrogation arose. 735 ILCS 5/2-403. Fidelity has met this requirement by pleading (1) it made whole each of the real estate escrow depositors and (2) it has taken assignments of "all their right, title, and interest in their claims."[6] *Krueger v. Cartwright,* 996 F.2d 928, 931 (7th Cir. 1993) ("the general rule in federal court is that if an insurer has paid the entire claim of the insured, the insurer is the real party in interest under Federal Rule of Civil Procedure 17(a) and must sue it its own name"). Therefore, Fidelity will be considered a subrogee.

Fidelity's contention that it is an assignee in the first instance and a subrogee only in the alternative fails as a matter of law. By pleading it has fully compensated each claimant, Fidelity has foreclosed the possibility it is an assignee. *See American Nat'l Bank & Trust Co. v. Weyerhauser Co.,* 692 F.2d 455, 462 (7th Cir. 1982) (claimants could not assign their claims after receiving full compensation).

Stewart contends Fidelity does not have the right to assert its claims under the principles of subrogation because Fidelity became primarily liable for the obligations of New Intercounty when Fidelity made the agreement with INTIC and New Intercounty on March 24, 2000. Stewart contends under this agreement Fidelity ran the escrow account and used new deposits to satisfy old obligations. However, Fidelity alleges this agreement made it a secondary obligor and disputes Stewart's description of how Fidelity ran the accounts. Viewed in a light most favorable to Fidelity, the principles of subrogation apply in this case.

---

[6] These allegations are also sufficient to defeat the contention that non-diverse Illinois claimants may enter this case and destroy diversity jurisdiction.

## VI. Motions to dismiss or stay based on other pending actions

Intercounty defendants, Peloza, Cornell, Hargrove, Hurwick, and Capriotti move to dismiss or stay this action pending the outcome of related state court litigation, pursuant to *Colorado River Water Conservation District v. U.S.*, 424 U.S. 800 (1976). Hargrove and Capriotti point to the pendency of the lawsuits filed by the InTrust receiver against them. Peloza, Cornell, and the Intercounty defendants address the pendency of the two state lawsuits: one filed by them against Fidelity; the other case filed by Hargrove and ITI against Fidelity was removed to this court.[7]

Federal courts possess a "virtually unflagging obligation" to exercise their jurisdiction. *Colorado River*, 424 U.S. at 817; *Finova Capital Corp. v. Ryan Helicopters USA, Inc.*, 180 F.3d 896, 898 (7th Cir. 1999). Only under exceptional circumstances should a federal court should abstain from exercising its jurisdiction and defer to the concurrent jurisdiction of a parallel state court proceeding. *Id.*

As a threshold matter, the court must ascertain whether parallel state proceedings actually exist. *Morton College Board of Trustees of Illinois Community College District No. 527 v. Town of Cicero*, 18 F.Supp.2d 921, 929 (N.D. Ill. 1998) (citing *Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700 (7th Cir. 1992). Without parallel proceedings, *Colorado River* abstention is inapplicable. *Id.* The suits are parallel when they involve "substantially the same parties litigating

---

[7]As an alternative basis for granting his request, Capriotti invokes *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). *Burford* abstention is inapplicable. Unlike the concerns addressed in *Burford* and the cases applying Burford abstention, Fidelity's case does not implicate difficult issues of state law bearing on policy or regulatory problems. *See e.g., International College of Surgeons v. City of Chicago*, 153 F.3d 356, 363 (7th Cir. 1998). The state law at issue is well-settled, and *Burford* abstention is rarely, if ever, appropriate under these circumstances. *See id.* Furthermore, Fidelity is not seeking the same funds as the InTrust receiver. Therefore, Fidelity's efforts should not interfere with those of the InTrust receiver.

13

substantially the same issues in two different courts." *Weigand v. Village of Tinley Park,* 114 F.Supp.2d 734, 739 (N.D. Ill. 2000). Fidelity points to the fact that none of the InTrust proceedings involve the Intercounty defendants, Stewart, Capjac, Peloza, Cornell, Thyfault, Wallwin, Waters, or Fidelity. The InTrust proceedings only involve Capriotti, Hargrove, Hurwick, ITI, and Wholesale. This factor alone is not determinative. Formal symmetry need not exist between the state and federal actions, but there should be a substantial likelihood that the state litigation will dispose of all claims presented in the federal case. *In re Chicago Flood Litigation,* 819 F.Supp. 762, 764 (N.D. Ill. 1993). Therefore, the issue is whether the parties in this case may be bound by the result of the state litigation. *Id.* The InTrust case charges Capriotti, Hargrove, and ITI with stealing funds from retirement fund escrow accounts and other trust accounts. Fidelity charges the defendants in this case with stealing funds from real estate escrow accounts. Resolving the issue of whether Capriotti, Hargrove, and ITI stole funds from retirement fund accounts will not necessarily dispose of the issues surrounding theft of real estate escrow account funds.

Fidelity further contends the state lawsuits are not parallel because Stewart is not a party,[8] and the suits do not address the key issue in Fidelity's complaint: the defendants' liability for theft. As discussed above, complete symmetry of parties is not required to justify a stay. However, the state lawsuits focus on breach of the reinsurance agreement and related claims, not on liability for the missing funds in the real estate escrow accounts. Defendants have not pointed to any issues in this case that will be resolved by the pending state actions, and therefore have not set forth adequate reasons to justify a surrender of federal jurisdiction.

---

[8]The lawsuit filed by Stewart was removed from the Circuit Court of Cook County and reassigned to this court.

14

## CONCLUSION

The motions to dismiss or stay are granted in part and denied in part. Counts I, III, V, and IX are dismissed without prejudice. The motions are denied in all other respects.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

January 17, 2001