# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5658 | **DATE** | 3/29/2001 |
| **CASE TITLE** | FIDELITY NATIONAL TITLE vs. INTERCOUNTY NATIONAL TITLE, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Fidelity's motion to dismiss Intercounty's counterclaims and third-party complaint [158-1] is granted in part and denied in part. Counts I and II are dismissed with prejudice. Count IX is dismissed without prejudice. Count VIII is dismissed only as it pertains to Peloza's and Cornell's claims. Count XI is dismissed without prejudice only as to the claims of Intercounty, INTIC, and INTIC Holding. The motion is denied as to Counts III through VII and X. Fidelity shall answer the surviving claims by April 10, 2001. ENTER MEMORANDUM OPINION AND ORDER.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAR 30 2001 | |
| | Notified counsel by telephone. | | date docketed | 200 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | 3/29/2001 | |
| | | | date mailed notice | |
| SB | courtroom deputy's initials | | jad | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NEW YORK,<br><br>Plaintiff,<br><br>v.<br><br>INTERCOUNTY NATIONAL TITLE INSURANCE COMPANY, et al.<br><br>Defendants. | No. 00 C 5658<br><br>Suzanne B. Conlon, Judge |

## MEMORANDUM OPINION AND ORDER

Fidelity National Title Insurance Company ("Fidelity-Title") sues to recover damages caused by an allegedly fraudulent scheme to loot millions of dollars from real estate escrow accounts held first by Intercounty Title Company of Illinois ("Old Intercounty") and later by Intercounty Title Company ("Intercounty"). On January 17, 2001, this court granted in part a motion to dismiss Fidelity-Title's claims.[1]

Intercounty, Intercounty National Title Insurance Company ("INTIC"), INTIC Holding Company ("INTIC Holding"), Susan Peloza ("Peloza"), and Terry Cornell ("Cornell") (collectively "counter-plaintiffs") counterclaim for damages caused by Fidelity-Title and assert a third party complaint against Fidelity National Financial, Inc. ("FNF") and Fidelity National's senior vice-president Thomas E. Simonton ("Simonton") (collectively "Fidelity"). Specifically, counter-plaintiffs sue Fidelity for violation of the Illinois Antitrust Act, § 3(3) (Count I), violations of the Sherman

---

[1]Fidelity-Title's surviving claims are breach of fiduciary duty (Count II), breach of escrow contract (Count IV), violation of the Illinois Title Insurance Act (Count VI), unjust enrichment (Count VII), and conversion (Count VIII).



Antitrust Act, §§ 1 and 2 (Count II), breach of contract (Counts III-IV), breach of fiduciary duty (Count V), tortious interference with contract (Count VI), fraud (Counts VII-IX), negligent misrepresentation (Count X), and defamation (Count XI). Fidelity moves to dismiss the counterclaims and third-party complaint (collectively "Compl."), pursuant to Fed.R.Civ.P. 12(b)(6).

## BACKGROUND

For purposes of a motion to dismiss, the court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in favor of the nonmovant. *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000). In 1995, Peloza and Cornell formed INTIC and Intercounty. INTIC is a title insurance business, and Intercounty is a title agency company. Under the Illinois Title Insurance Act, INTIC was required to establish and maintain a statutory premium reserve for the protection of its title insurance policy holders. 215 ILCS 155/11. As a start-up company, INTIC could not meet this statutory requirement and, thus, required reinsurance. On September 14, 1995, INTIC and Fidelity-Title executed an agreement, whereby INTIC acted as a title insurer and Fidelity acted as INTIC's reinsurer. Under the agreement, Fidelity-Title had the right to terminate the agreement only upon four stated conditions.[2] Cancellation of INTIC's reinsurance would result in the Department of Financial Institution ("DFI") immediately shutting down INTIC.[3] Counter-plaintiffs allege that this arrangement gave Fidelity a power to destroy and that Fidelity repeatedly abused this power.

Prior to Peloza and Cornell starting INTIC and Intercounty, Simonton, the senior vice-president of Fidelity, arranged for INTIC to use ITI Enterprises, Inc. ("ITI") for direct management

---

[2]None of these four conditions ever occurred.

[3]Intercounty would be out of business as a result.

of Intercounty's escrow accounts. Although Fidelity-Title was not a party to the INTIC-ITI-Intercounty agreement, Simonton was an active participant in the agreement's negotiation and drafting. ITI was run by Simonton's close personal friends, William Craig and Laurence Capriotti.

In mid-1997, counter-plaintiffs became concerned with the quality and reliability of ITI's services. Consequently, counter-plaintiffs informed Fidelity-Title that they wanted to continue their relationship with the company but find a replacement for ITI. Simonton threatened to cancel their reinsurance agreement if counter-plaintiffs fired ITI.

The inadequacy of ITI's performance continued into 1998. Fidelity refused to address any concerns Peloza and Cornell raised about ITI and ignored their repeated requests to allow ITI's replacement. Counter-plaintiffs further allege that Fidelity repeatedly interfered with their business by falsely claiming the company had audited ITI's accounts and everything was in order. On February 25, 2000, ITI admitted to counter-plaintiffs that unauthorized withdrawals had been made from Intercounty's escrow fund. Given Fidelity's repeated assurances that ITI's operations were in order, counter-plaintiffs immediately demanded answers from Fidelity. In response, Fidelity-Title sent its auditors to ITI. The auditors estimated that Intercounty's escrow account was short by approximately $8-10 million. Fidelity blamed ITI and counter-plaintiffs for this mismanagement.

By March 2000, counter-plaintiffs were negotiating with other companies to provide reinsurance upon the expiration of their reinsurance agreement with Fidelity-Title in September 2000. On March 17th, Simonton invited Peloza and Cornell to a meeting at Fidelity-Title's headquarters. At this meeting on March 20th,[4] Fidelity-Title proposed to extend the reinsurance agreement for another

---

[4]This was also the date that FNF purchased Chicago Title Corporation, which possessed over 50% of the market share for residential real estate title insurance and related services in the Chicagoland area.

3

five years. Fidelity-Title also assured counter-plaintiffs it would continue to audit ITI and provide accounting and escrow services to phase out ITI. The parties entered into the proposed agreement on March 24, 2000. Under the agreement, Fidelity-Title would provide reinsurance to INTIC, and Peloza and Cornell would pledge their INTIC and Intercounty stock to Fidelity-Title. The agreement provided that Fidelity-Title had authority to "control, monitor, and oversee all aspects and functions of all escrow accounts of Intercounty, as well as the escrow account department and accounting department of Intercounty." Cmplt. at Ex. 6.

Simonton terminated the reinsurance agreement on April 21, 2000. Simonton claimed Fidelity-Title entered into the agreement based on the belief that Intercounty's escrow deficiency was between $8 and $10 million. Simonton further claimed Fidelity-National had just learned the deficiency actually was between $46 and $55 million. Counter-plaintiffs assert the March 24th agreement was in no way based on representations about Intercounty's escrow deficiencies.

On April 23, 2000, Fidelity-Title wrote to INTIC, stating it had reconsidered the termination of the reinsurance agreement. On April 26th, INTIC and Intercounty executed an agreement with Fidelity-Title, which guaranteed them five years of reinsurance in return for their stock pledges plus additional collateral. Fidelity terminated this agreement on June 23, 2000 because Fidelity-Title "now had reason to believe that the subject escrow has for many years been misused by the management of INTIC and Intercounty..." As a result of Fidelity-Title's reinsurance cancellation, DFI issued a cease and desist order to INTIC. Fidelity subsequently seized the counter-plaintiffs' customers and business.

## DISCUSSION

### I. Motion to dismiss standard

In ruling on a motion to dismiss, the court considers "whether relief is possible under any set of facts that could be established consistent with the allegations." *Pokuta v. Trans World Airlines, Inc.*, 191 F.3d 834, 839 (7th Cir. 1999) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). A claim may be dismissed only if there is no set of facts that would entitle the plaintiff to relief based on the allegations in the complaint. *Vonderohe v. B & S of Fort Wayne, Inc.*, 36 F.Supp.2d 1079, 1081 (7th Cir. 1999). A motion to dismiss tests the sufficiency of the complaint, not its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).

### II. Analysis

#### A. Peloza's and Cornell's standing

Count VIII alleges Fidelity engaged in a scheme to defraud INTIC of its business value and induce the company not to pursue other business alliances. Cmplt. at ¶ 137. Fidelity contends Peloza's and Cornell's claims must be dismissed from Count VIII because they have no standing to sue as individual shareholders. "A shareholder has no right to seek damages for an injury to the corporation." *Creek v. Village of Westhaven*, 80 F.3d 186, 191 (7th Cir. 1996). When shareholders have been injured in common, they must bring a derivative action in the corporate name. *Frank v. Hadesman and Frank, Inc.*, 83 F.3d 158, 160 (7th Cir. 1996). However, injury to the corporation does not prevent suit by a shareholder who suffers a distinct personal injury. *Id.*

Peloza and Cornell assert they have properly alleged personal injury, not merely injury to the corporation. Specifically, they allege: (1) loss of business; (2) inability to establish reinsurance with another company; (3) absence of choice in purchasing raw data leading to title commitments from

5

Fidelity; and (4) damage to their personal reputations and business prospects. Cmplt. at ¶¶ 1, 44, 67, and 84.

All the harm asserted by Peloza and Cornell was caused by fraud allegedly committed against INTIC. "An action in which the holder can prevail only by showing an injury or breach of duty to the corporation should be treated as a derivative action." *Frank v. Hadesman and Frank, Inc.*, 83 F.3d 158, 160 (7th Cir. 1996). Accordingly, Peloza and Cornell lack standing to assert the fraud claims in Count VIII.[5]

**B. Defamation**

Count XI alleges Fidelity is liable for defamation *per se* because Fidelity sent a letter to members of the Chicago area real estate community stating that Peloza and Cornell had been involved in criminal activity since 1990. Cmplt. at ¶ 151. Under Illinois law, the following elements are essential for a defamation claim: (1) a defamatory statement of fact about the plaintiff; (2) publication; and (3) injury to the plaintiff's reputation. *Chisholm v. Foothill Capital Corporation*, 3 F.Supp.2d 925, 938 (N.D. Ill. 1998).

Fidelity contends counter-plaintiffs failed to properly allege the letters were published because the recipients of the letters are not specified. However, for purposes of a motion to dismiss, allegations that the letter was sent to various members of the Chicago area real estate community is sufficient. *See e.g., Strasburger v. Board of Educ.*, 143 F.3d 351, 359 (7th Cir. 1998) (dismissal is proper only when it appears beyond doubt plaintiff can prove no set of facts to support allegations). The complaint provides Fidelity with sufficient information to adequately respond to the allegations. *Hanania v. Loren-Maltese*, 56 F.Supp.2d 1010, 1019 (N.D. Ill. 1999) (defamation claim should not

---

[5] Fidelity's claim regarding the California forum selection clause is moot.

be dismissed when defendants can respond). Fidelity may pursue the details of the mailings through discovery. *See Chisholm v. Foothill Capital Corporation,* 940 F.Supp. 1273, 1284 (N.D. Ill. 1996) (the details of a defamation claim may be discerned through discovery).

Although it is true that some specificity for defamation claims is required, the specificity requirement pertains to the content of the defamatory remarks. *See e.g., Vantassell-Martin v. Nelson,* 741 F.Supp. 698, 707 (N.D. Ill. 1990) (plaintiffs alleging defamation must recite the precise language alleged to be defamatory); *Pelech v. Klaff-Joss,* 828 F.Supp. 525, 534 (N.D. Ill. 1993) (plaintiffs do not have to allege the exact wording of the defamatory remarks when the substance of the remarks enable defendants to respond). Counter-plaintiffs allege a specific defamatory statement, namely that Peloza and Cornell have been involved in criminal activity since 1990. Cmplt. at ¶ 151. Furthermore, attached to the complaint is a copy of the letter containing the remarks. *Id.* at Ex. 20. Thus, there is no ambiguity in regard to the alleged defamatory remarks. The fact that counter-plaintiffs did not allege the names of the persons to whom the letters were sent does not warrant dismissal of their defamation claim. *See Chisholm,* 940 F.Supp. at 1284-85 (failure to specify to whom the defamatory comments were made does not justify dismissal of a defamation claim); *Hanania,* F.Supp.2d at 1019 (defamation claim should not be dismissed for failure to specify to whom the defamatory comments were made).

Fidelity further contends the alleged defamatory letter attached to the complaint contradicts counter-plaintiffs' defamation allegations. Specifically, Fidelity asserts that because the addressee on the exhibit letter is covered by black marks, the letter contradicts counter-plaintiffs' allegation that the letter was published. It is true that "to the extent that the written document contradicts the allegations in the complaint, the former controls." *In re First Chicago Corp. Securities Litigation,* 769 F.Supp.

7

1444, 1450 (N.D. Ill. 1991). However, the fact that the addressee is obliterated does not contradict the allegation that the letter was published. The exhibit letter just fails to provide certain information. If anything, the clear black marks where the addressee information usually appears suggests the letter was sent to someone. *See e.g., Kelley v. Crosfield Catalysts,* 135 F.3d 1202, 1205 (7th Cir. 1998) (ambiguities are construed in favor of the plaintiff).

Fidelity also asserts the claims of INTIC, INTIC Holding, and Intercounty should be dismissed from Count XI because the letter does not contain defamatory remarks about these corporations. Counter-plaintiffs contend these corporations were defamed by the letter because INTIC was mentioned in the letter and Cornell and Peloza are INTIC's principals. This argument does not address their failure to allege a defamatory statement of fact about INTIC, INTIC Holding, or Intercounty. The letter does not even state that Cornell and Peloza were principals of these corporations.[6] Accordingly, the claims of INTIC, INTIC Holding, and Intercounty must be dismissed without prejudice from Count XI.

### C. Antitrust claims

Counter-plaintiffs assert Fidelity obtained the power to control prices for residential real estate within the relevant geographic market, in violation of Illinois antitrust laws and the Sherman Act.[7] Cmplt. at ¶¶ 92, 102. Specifically, Count I alleges Fidelity violated Illinois antitrust laws when it acquired Chicago Title for the purpose of raising prices for title insurance and took steps to ensure

---

[6]Counter-plaintiffs did not allege defamation *per quod* or special damages.

[7]Section 1 of the Sherman Act forbids conspiracies in restraint of trade or commerce among the states or with foreign nations. Section 2 of the act prohibits monopolization, attempts to monopolize, or conspiracies to monopolize trade or commerce among the several states or with foreign nations.

8

counter-plaintiffs could not compete in the market. Cmplt. at ¶¶ 90-91. Count II alleges Fidelity "jointly and in concert with others have engaged in conduct in restraint of trade or commerce . . . and have monopolized, attempted to monopolize, and/or conspired with other persons to monopolize trade or commerce . . ." Cmplt. at ¶ 104.

### 1. Restraint on interstate commerce

Fidelity first contends Count II should be dismissed because counter-plaintiffs fail to allege a restraint on interstate commerce. However, this claim is sufficient for pleading purposes because it can be construed as alleging a restraint on interstate commerce. *See Kelley v. Crosfield Catalysts,* 135 F.3d 1202, 1205 (7th Cir. 1998) (ambiguities in a complaint are construed in favor of the plaintiff). Even courts use the more general term "commerce" when referring to interstate commerce. *See Hammes v. AAMCO Transmissions, Inc.,* 33 F.3d 774, 781-82 (7th Cir. 1994) (when the jurisdictional prerequisite is effect on interstate commerce, pleading a conclusion is sufficient because "there are astonishingly few offenses to antitrust principles that do not '*affect commerce*' ") (emphasis added).

Fidelity further contends counter-plaintiffs have plead themselves out of meeting the effect on interstate commerce requirement because they allege "the relevant geographic market for antitrust purposes is the seven-county Chicagoland area" and the product market is "the provision of real estate title insurance . . . within the relevant geographic market." Cmplt. at ¶¶ 98-99. These allegations suggest Fidelity's actions were limited to the Chicago area. It does not necessarily follow that the *effect* of Fidelity's actions was limited to the Chicago area. Actions among local sellers may affect interstate commerce. *Hammes,* 33 F.3d at 779-80. Read in a light most favorable to counter-plaintiffs, they have properly alleged an effect on interstate commerce.

## 2. Conspiracy

Fidelity asserts Count II is barred because the alleged conspiracy to restrain commerce is between FNF and its wholly-owned subsidiary Fidelity-Title. A conspiracy cannot exist between a corporation and one of its divisions. *Copperweld v. Independence Tube Corp.*, 467 U.S. 752, 771 (1984). "[T]he operations of a corporate enterprise organized into divisions must be judged as the conduct of a single actor." *Id* at 770. Therefore, Fidelity-Title and FNF cannot conspire between themselves to restrain trade.[8] However, counter-plaintiffs also allege Fidelity conspired with others to restrain and monopolize trade. Counter-plaintiffs may be able to prove facts consistent with these allegations. Furthermore, the Section 2 claims are independent of any conspiracy theory. They allege Fidelity monopolized or attempted to monopolize trade or commerce.

## 3. Antitrust injury

Fidelity contends both the Illinois and federal antitrust claims should be dismissed because counter-plaintiffs have failed to allege an antitrust injury. To establish an antitrust injury, the plaintiff "must show not only that the injury is of the type intended to be protected by the antitrust laws, but that the violation was 'the cause-in-fact of the injury; that 'but for' the violation, the injury would not have occurred." *O.K. Sand & Gravel, Inc. v. Martin Marietta Technologies, Inc.*, 36 F.3d 565, 573 (7th Cir. 1994). Counter-plaintiffs allege they suffered antitrust injury because Fidelity-Title: (1) used its market share to raise prices for title insurance; and (2) took steps to ensure that counter-plaintiffs could not compete with Fidelity-Title or Chicago Title. Cmplt. at ¶¶ 100-101

---

[8]The question of whether they can conspire to monopolize trade need not be addressed for reasons discussed in the antitrust injury section of this decision.

10

Counter-plaintiffs cannot establish facts consistent with their allegations to prove they suffered antitrust injury. First, a plaintiff suffers no antitrust injury when prices are raised by a defendant's behavior. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 582-83 (1986) (competitors stand to gain from price increases and suffer no antitrust injury). Second, the counter-plaintiffs' inability to compete in the market was not based on any monopoly or conspiracy to restrain trade. Counter-plaintiffs were unable to compete in the market because DFI shut them down after Fidelity refused to provide reinsurance. Breach of the reinsurance agreement is not prohibited by antitrust laws. Therefore, any antitrust violation on the part of Fidelity was not the cause-in-fact of counter-plaintiffs' injuries. *See Dawson v. W. & H. Voortman, Ltd.,* 853 F.Supp. 1038, 1046 (N.D. Ill. 1994) (when plaintiffs' allegations revolve around its own contractual relationship with the defendant there is insufficient basis for an antitrust claim). Accordingly, Counts I and II must be dismissed with prejudice.

### D. Breach of contract claims

Fidelity contends Counts III and IV should be dismissed because subsequent agreements between the parties show Fidelity did not breach the reinsurance agreement. It is true that subsequent agreements between the parties gave Fidelity authority to cancel reinsurance under certain circumstances. However, counter-plaintiffs allege the prerequisites to triggering the cancellation clauses never occurred. Read in a light most favorable to counter-plaintiffs, they have adequately alleged breach of contract. Accordingly, the motion to dismiss Counts III and IV must be denied.

### E. Breach of fiduciary duty claim

Fidelity asserts Count V must be dismissed because counter-plaintiffs cannot properly allege a breach of fiduciary duty claim. A fiduciary relationship arises as a result of the "special

11

circumstances of the parties' relationship, where one party places trust in another so that the latter gains superiority and influence over the former." *Ransom v. A.B. Dick Co.*, 289 Ill.App.3d 663, 672 (1st Dist. 1997). This superiority and influence must be substantial. *See Lagen v. Balcor Co.*, 653 N.E.3d 968, 975 (2d Dist. 1995) ("a slightly dominant business position does not operate to turn a formal, contractual relationship into a confidential or fiduciary relationship"). Counter-plaintiffs contend defendants knew a cancellation of the reinsurance agreement would result in DFI automatically shutting them down. They further allege Fidelity threatened it would unilaterally terminate the reinsurance agreement if INTIC acted on its desire to end its relationship with ITI. Cmplt. at ¶ 115. Read in a light most favorable to counter-plaintiffs, these allegations suggest Fidelity exercised substantial dominance over them.

In addition, counter-plaintiffs properly allege breach of Fidelity's fiduciary duty. Specifically, they allege Fidelity failed to disclose mismanagement and theft at ITI. *Id.* at ¶ 116. Contrary to Fidelity's assertion, Fidelity could have known about ITI's alleged wrongful actions even though it did not have a contractual relationship with ITI. Accordingly, the motion to dismiss Count V must be denied.

### F. Tortious interference with contract claim

In Count VI, counter-plaintiffs claim Fidelity tortiously interfered with the INTIC-ITI-Intercounty contract by assisting ITI in massive fraud. Cmplt. at ¶ 124. To state a claim for tortious interference with contract under Illinois law,, a plaintiff must allege: (1) plaintiff had a valid contractual relationship with another party; (2) defendant was aware of that relationship; (3) defendant intentionally or unjustifiably induced the other party to breach; (4) the other party breached the

12

contract as a result of defendant's actions; and (5) that breach caused plaintiff's damages. *Cook v. Winfrey*, 141 F.3d 322, 327-28 (7th Cir. 1998).

Fidelity contends this claim fails because the actions allegedly interfering with the contract were directed at counter-plaintiffs, not ITI. However, the elements of a tortious interference with contract claim do not require *direct* inducement of the breaching party. Allegations that a defendant's behavior caused a third party not to perform its contract suffice. *See* Restatement of Torts, § 766 ("One who intentionally and improperly interferes with the performance of a contract . . . between another and a third party by *inducing or otherwise causing* the third person not to perform the contract is subject to liability . . .") (emphasis added); *Europlast, Ltd. v. Oak Switch Systems, Inc.*, 10 F.3d 1266, 1273 (7th Cir. 1993).[9] Counter-plaintiffs have alleged Fidelity's inadequate audits and false audit claims enabled ITI to improperly transfer funds from Intercounty's escrow accounts. Accordingly, Count VI withstands the motion to dismiss.

### G. Promissory Fraud

Counts VII and VIII allege Fidelity is liable for promissory fraud. "Promissory fraud is a false representation of intent concerning future conduct, such as a promise to perform a contract when there is no actual intent to do so." *Houben v. Telular Corp.*, 231 F.3d 1066, 1074 (7th Cir. 2000). Promissory fraud is not typically actionable in Illinois unless the promise is part of a scheme to defraud. *Id; Razdan v. General Motors Corp.*, 979 F.Supp. 755, 759 (N.D. Ill. 1997) (citing *Bowers v. Jones*, 978 F.2d 1004, 1011 (7th Cir. 1992).

---

[9] Counter-plaintiffs' allegation that they suffered harm to their business as a result of ITI's breach is sufficient for the fifth element of a tortious interference with contract claim.

13

Counter-plaintiffs allege Fidelity's false promises regarding the continuation of reinsurance were part of a scheme to defraud INTIC and Intercounty of their business value. Cmplt. at ¶¶ 129, 137. Fidelity challenges the merits of the false promise claim, contending it cannot be liable for false reinsurance promises when agreements specifically granted Fidelity the right to cancel reinsurance. However, counter-plaintiffs allege the conditions in the agreements justifying cancellation never occurred.[10] Therefore, counter-plaintiffs have sufficiently alleged false promises.

Fidelity further contends counter-plaintiffs fail to properly allege fraudulent intent. In order to survive the pleading stage for a promissory fraud claim, "a claimant must be able to point to specific, objective manifestations of fraudulent intent–a scheme or device." *Bower*, 978 F.2d at 1011. The allegations satisfy this requirement. Fidelity's scheme to defraud was allegedly motivated by a desire to put Fidelity in a position where it could destroy INTIC, a major competitor in the residential market. Cmplt. at ¶ 137. Accordingly, Count VIII survives dismissal.

### H. Fraud

Count IX claims Fidelity is liable for fraud because "on numerous occasions between 1996 and 1999 . . . [Fidelity] informed INTIC and New Intercounty that [it] had audited Escrow Agent ITI's operations, and that everything was in order," knowing this was not true. Cmplt. at ¶¶ 140, 142. In order to properly allege fraud, "the circumstances constituting fraud . . . shall be stated with particularity." Fed.R.Civ.P. 9(b); *Uni Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992). To satisfy Rule 9(b), a plaintiff must state "the identity of the person who made the

---

[10]For this reason, Fidelity's claim that counter-plaintiffs failed to properly allege justifiable reliance also fails.

misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Id.*

The allegations in Count IX lack sufficient specificity. The manner in which many allegedly fraudulent statements were made or when and where each statement was made are unspecified. Furthermore, there is no indication as to whether all Fidelity parties participated in each alleged incident of fraud, and if not, which Fidelity party made each individual statement. *See TLMS Motor Corp. v. Toyota Motor Distributors, Inc.,* 912 F.Supp. 329, 334 (N.D. Ill. 1995) ("where the plaintiff alleges that multiple defendants committed a fraud, the complaint may not simply lump all the defendants together, but must specify which defendant committed which allegedly fraudulent act"). For purposes of a fraud claim, Fidelity has not been adequately notified as to its purported role in the scheme. *See Midwest Grinding Co. v. Spitz,* 976 F.2d 1016, 1020 (7th Cir. 1992) (plaintiff alleging fraud must reasonably notify defendants of their alleged role in the scheme). Accordingly, Count IX is dismissed without prejudice.

**I. Negligent Misrepresentation**

Count X asserts a claim for negligent misrepresentation based on the same allegations in Count VIII's fraud claim, namely Fidelity claimed ITI was audited and everything was in order. Cmplt. at ¶ 146.[11] To recover for negligent misrepresentation in Illinois, a plaintiff must prove the defendant "is

---

[11] Under Illinois law, a plaintiff must establish the following for a negligent misrepresentation claim: (1) defendant had a duty to communicate accurate information; (2) defendant made a false statement of material fact; (3) defendant was careless or negligent in ascertaining the truth or falsity of the statement; (4) defendant intended to induce the other party to act; (5) plaintiff relied on the false statement; and (6) plaintiff suffered damages resulting from that reliance. *Orix Credit Alliance, Inc. v. Taylor Machine Works, Inc.,* 125 F.3d 468, 475 (7th Cir. 1997).

15

in the business of supplying information for the guidance of others in their business transaction." *Orix Credit Alliance, Inc. v. Taylor Machine Works, Inc.*, 125 F.3d 468, 475 (7th Cir. 1997).

Fidelity contends it is neither alleged nor plausible that Fidelity was in the business of giving audit opinions on escrow accounts held by third parties. It is undisputed that Fidelity is primarily in the business of title insurance and reinsurance. However, a company "need not be *exclusively* in the business of supplying information to be held liable for negligent misrepresentation." *Id* at 476 (emphasis added). In situations where a company provides both information and non-informational services the dispositive question is "whether the information furnished with the non-informational goods was central to the business transaction." *Id.* If the information provided is not central to the sale of goods, a company may be considered to be in the business of selling goods and in the business of supplying information.

Reinsurance was the non-informational commodity Fidelity sold counter-plaintiffs. It is not clear that the audit information was connected to the reinsurance or otherwise assisted counter-plaintiffs in purchasing or using the reinsurance. Moreover, the audit information was allegedly central to counter-plaintiffs' dealings with ITI. Read in a light most favorable to counter-plaintiffs, these factors suggest Fidelity could be classified as being in the information supply business. *See Id* (when defendant supplies information central to plaintiff's transaction with a third party and the information does not clearly accompany the goods defendant provided, it suggests defendant should be classified as being in the information supply business).

Fidelity further contends counter-plaintiffs' negligent misrepresentation allegations lack sufficient specificity for the same reasons their fraud claim in Count VIII lacks sufficient specificity. However, it is well established that the particularity requirement in Rule 9(b) applies only to

16

allegations of fraud. *Marcano v. Northwestern Chrysler-Plymouth*, 550 F.Supp. 595, 603 (N.D. Ill. 1982). Thus, negligent misrepresentation claims are outside the scope of Rule 9(b). "The fact that some of the conduct underlying these non-fraud claims may also form the basis of a separate fraud action is irrelevant. To hold otherwise would eviscerate the notice pleading requirement applicable to claims not specifically sounding in fraud." *ABC-Naco, Inc. v. Deruyter*, No. 99 C 1969, 1999 WL 521171 (N.D. Ill. 1999). Therefore, the fact that the allegations are insufficient for a fraud claim does not necessarily mean they are insufficient for a negligent misrepresentation claim. Accordingly, Count X withstands dismissal.

## CONCLUSION

Fidelity's motion to dismiss Intercounty's counterclaims and third-party complaint is granted in part and denied in part. Counts I and II are dismissed with prejudice. Count IX is dismissed without prejudice. Count VIII is dismissed only as it pertains to the claims of Peloza and Cornell. Count XI is dismissed without prejudice only as it pertains to the claims of Intercounty, INTIC, and INTIC holding. the motion is denied as to Counts III through VII and X.

ENTER:

Suzanne B. Conlon
United States District Judge

March 29, 2001

17