IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

MAR 0 7 2003

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NEW YORK, a New York corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 00 C 5658 |
| v. | ) ) ) | The Honorable Suzanne B. Conlon |
| INTERCOUNTY NATIONAL TITLE INSURANCE COMPANY, an Illinois corporation, et al., | ) ) ) ) ) | Magistrate Judge Geraldine Brown |
| Defendants. | ) | |

### FIDELITY'S RESPONSE TO STEWART'S MOTION *IN LIMINE* TO BAR THERESA CRANE AS A WITNESS

Stewart has moved to bar Fidelity from calling Theresa Crane as a witness at trial (the "Motion"). Ms. Crane was an employee of Old Intercounty who was in charge of residential closings. She has personal knowledge of the issuance of Stewart's insured closing letters on relevant escrow transactions.

The gravamen of Stewart's Motion is that Stewart had no notice that Ms. Crane had information relevant to this lawsuit. However, Stewart has known about Ms. Crane since the early 1990s. Stewart personnel interacted with Ms. Crane while she was at Old Intercounty regarding the issuance of Stewart's insured closing letters. (*See* Declaration of Ms. Crane, attached hereto as Exhibit A.) Ms. Crane spoke with, and sent faxes to, Stewart Senior Vice-President James Kletke, who remains employed as Stewart's Chief Underwriting Counsel. (*See* Exhibit B hereto (Stewart website listing Mr. Kletke).) ***Thus, the real issue is why Stewart did not disclose to Fidelity Ms. Crane and her role at the start of this case.*** Stewart's Rule 26(a)

639

disclosure was plainly incomplete. Nor did Stewart disclose James Kletke and his important role.

Fidelity did not list Ms. Crane initially for the simple reason that Fidelity was unaware of her. Fidelity first became aware of her through the Initial Disclosures of Michel Thyfault and then through the deposition testimony of various witnesses. (Ms. Crane was discussed in depositions in February, June, and August 2001). Fidelity listed her on its initial pretrial order filed in November of 2001.

## I. MS. CRANE'S TESTIMONY AT TRIAL CAN HAVE NO PREJUDICIAL EFFECT ON STEWART.

Stewart argues that, because Ms. Crane was not listed on Fidelity's Initial Disclosures, she is *ipso facto* barred from testifying at trial. Stewart is mistaken. The decision to bar a witness is entrusted to the broad discretion of this Court, and is not mechanical or reflexive. *Dorr-Oliver Inc. v. Fluid Quip, Inc.*, No. 93 C 842, 1994 WL 13657, at *2 (N.D. Ill. Jan. 6, 1994) (Conlon, J.). The Court in its discretion may properly consider: (1) that Stewart will suffer no prejudice or surprise from Ms. Crane's testimony; (2) the ability to cure any prejudice; (3) that her testimony will not disrupt the trial; and (4) that Fidelity exhibited no bad faith or willfulness in not separately listing Ms. Crane on its Initial Disclosures. *Id.*

Stewart protests surprise, but Stewart knew of Ms. Crane's relevance long before it made this Motion. *First*, Ms. Crane interacted for years with Stewart personnel while she was in charge at Old Intercounty:

> As head of residential closing for Old Intercounty, I dealt with Stewart personnel with respect to the issuance of Stewart's insured closing letters. I discussed the issuance of Stewart's insured closing letters with Eleanor Sharp of Stewart's Chicago office, as well as James Kletke of Stewart's Houston office, in particular when an insured closing letter needed to be amended for some reason. They occasionally asked me to fax them copies of the proposed amendments to Stewart's insured closing letters.

(Exhibit A at ¶3.) As Exhibit B shows, one of these people (James Kletke) remains with Stewart, and is currently Stewart's Senior Vice President and Chief Underwriting Counsel. Stewart must be faulted for not listing Theresa Crane as a witness on its own Initial Disclosure and identifying her interaction with Stewart for at least five years.

*Second*, Ms. Crane appeared on former Defendant Michel Thyfault's Rule 26(a) disclosures as a person with potentially relevant knowledge and as an employee of ITI Enterprises. (*See* Motion at ¶ 5.) Stewart attempts to skirt this fact by asserting that "Fidelity cannot argue that the Stewart Parties should have taken it upon themselves to depose all of the people on Mr. Thyfault's lengthy Rule 26 disclosure." (*Id.* at 3, n.1.) However, the applicable standard by which this Court is to determine whether a witness should be precluded from testifying is not whether the party against whom the witness is offered could "have taken it upon themselves to depose" the witness, but whether the potential testimony of that witness at trial would be a surprise. *Dorr*, 1994 WL 13657, at *2. As Stewart admits, Ms. Crane is not a surprise.

*Third*, in the depositions of Claire Allen, Robert Martos, and Susan Peloza, Ms. Crane is identified as a person involved with the real estate closings and the subsequent recording of funds from those closings at Old Intercounty. Those depositions occurred on February 17, 2001, June 28, 2001 and August 15, 2001, respectively, and Stewart participated in all of them. In the first deposition in this case, taken two years ago, when questioned by Fidelity counsel, Claire Allen testified as follows:

> Q. Was there anyone at Intercounty of Illinois during the time that you were working there that was in charge of following up with the closers as far as any undeposited funds; for example, I'm expecting -- you know, I report that I'm expecting X number of dollars?
>
> A. Yeah, and I think Theresa Crane, who was in charge of the closers, received this undeposit list, I think.

3

(2/17/01 Allen Dep. at 175:17-24 attached hereto as Exhibit C.)

It is simply incredible for Stewart to ask this Court to believe that Stewart had not received ample notice of Ms. Crane. *See Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.*, 60 F.3d 153, 156 (3d Cir. 1995) (finding no abuse of discretion by the district court in allowing testimony of witnesses not listed on Rule 26(a) disclosures where the party against whom the witnesses testified knew the names of the witnesses and the scope of their potential knowledge well before trial).

*Fourth*, when the parties filed their initial pre-trial submissions in November of 2001, Ms. Crane was plainly listed by Fidelity as a "may call" witness. This is yet another form of notice Stewart had that Ms. Crane was a potential witness in this case.

## II. THE LACK OF MS. CRANE'S NAME ON FIDELITY'S INITIAL DISCLOSURES WAS NEITHER IN BAD FAITH NOR WILLFUL.

Fidelity has exhibited no bad faith in not putting Ms. Crane's name on its Initial Disclosures. Under Rule 26(e), Fidelity was not obligated to name Ms. Crane as a potential witness because Stewart had received additional information about her during the course of discovery. Rule 26(e)(1) provides that:

> [a] party is under a duty to supplement . . . its disclosures under subdivision (a) if the party learns that in some material respect the information disclosed is incomplete and incorrect and *if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing*.

(emphasis added); *see also* Advisory Committee Notes to 1993 Amendments to Rule 26(e) (noting that there is "no obligation to provide supplemental or corrective information that has been otherwise made known to the parties . . . during the discovery process, as when a witness not previously disclosed is identified during the taking of a deposition . . . ."). Fidelity was under no obligation under the Federal Rules to provide separately information that Stewart already had,

4

nor should Fidelity now be penalized for Stewart's unwillingness to make use of the information it had at the appropriate time.

Stewart asks this Court to believe that, aside from Fidelity's Rule 26(a) disclosures, Stewart was prevented from seeing anything else that was going on in the lengthy history of this case. Any harm, if at all, that Stewart may suffer as a result of Ms. Crane's testimony is attributable only to Stewart's indolence in pursuing Ms. Crane because it had ample opportunity to do so, particularly in light of Stewart's failure to talk to its own personnel about their dealings with Old Intercounty personnel.

In light of the foregoing, Plaintiff respectfully requests the denial of Stewart's Motion in its entirety.

FIDELITY NATIONAL TITLE INSURANCE
COMPANY OF NEW YORK

By: *Edwin C. Thomas*
One of Its Attorneys

Edwin C. Thomas
Albert E. Fowerbaugh, Jr.
Ronald M. Lepinskas
LORD, BISSELL & BROOK
115 South LaSalle Street
Chicago, Illinois 60603
(312) 443-0700

Terry N. Christensen
James S. Schreier
Eric P. Early
CHRISTENSEN, MILLER, FINK, JACOBS
GLASER, WEIL AND SHAPIRO, LLP
2121 Avenue of the Stars
18th Floor
Los Angeles, California 90067
(310) 553-3000

# See Case File For Exhibits