Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5658, 00 C 7086 | **DATE** | 4/29/2003 |
| **CASE TITLE** | FIDELITY vs. INTERCOUNTY STEWART vs. FIDELITY | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due ___ ___.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for __ ___ at _ ____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on __ ___ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on __ ___ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on ____ _ at __ ___.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Fidelity's motion to bar references at trial to its insurance coverage [610-1] is granted. Fidelity's motions to bar the testimony of Frank Casillas [611-1] and to exclude evidence contesting Fidelity's assignments [612-1] are denied. The Intercounty defendants' motion *in limine* to exclude expert testimony regarding others' knowledge or state of mind [615-5] is granted. The Intercounty defendants' remaining motions *in limine* [615-1][615-2][615-3][615-4] are denied. The Stewart defendants' motion *in limine* to bar expert testimony by William Pollard [616-1] is granted in part and denied in part. The Stewart defendants' remaining motions *in limine* [617-1][618-1][619-1][620-1] are denied. Hargrove's motion to bar evidence regarding an ongoing criminal investigation [608-2] is granted. His remaining motions *in limine* [608-1][608-3] are denied. Simonton's motion *in limine* [614-1] is granted in part and denied in part. ENTER MEMORANDUM OPINION AND ORDER.

(11) ■ [For further detail see order attached to the original minute order.]

*Suzanne B. Conlon*

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | APR 30 2003 | |
| | Docketing to mail notices. | | date docketed | 672 |
| | Mail AO 450 form. | | docketing deputy initials | |
| ✓ | Copy to Magistrate Judge Brown. | | 4/29/2003 | |
| | | | date mailed notice | |
| CB | courtroom deputy's initials | | PW | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NEW YORK, )<br><br>Plaintiff, )<br><br>v. )<br><br>INTERCOUNTY NATIONAL TITLE INSURANCE COMPANY, et al., )<br><br>Defendants. ) | No. 00 C 5658<br><br>Suzanne B. Conlon, Judge |
| STEWART TITLE GUARANTY COMPANY, )<br><br>Plaintiff, )<br><br>v. )<br><br>FIDELITY NATIONAL TITLE INSURANCE CO. OF NEW YORK, )<br><br>Defendant. ) | No. 00 C 7086<br><br>Suzanne B. Conlon, Judge |

DOCKETED
APR 3 0 2003

## MEMORANDUM OPINION AND ORDER

Fidelity National Title Insurance Company of New York ("Fidelity") sues remaining

defendants Intercounty Title Company, Intercounty National Title Insurance Co. ("INTIC"), Susan

Peloza and Terry Cornell (collectively, "the Intercounty defendants"), Stewart Title Company,

Stewart Title Guaranty Company ("Stewart") and Stewart Information Services Corp. (collectively,

"the Stewart defendants") and Jack Hargrove to recover damages caused by an allegedly fraudulent

scheme to loot millions of dollars from real estate escrow accounts held first by Intercounty Title

Company of Illinois ("Old Intercounty") and later by Intercounty Title Company ("New

Intercounty"). The Intercounty defendants, along with INTIC Holding Co. ("INTIC Holding")(collectively, "counterplaintiffs"), counterclaim for damages caused by Fidelity and bring a third party complaint against Fidelity National Financial, Inc. ("Fidelity Financial") and Fidelity Financial's senior vice president Thomas Simonton (collectively, "counterdefendants"). Stewart brings a related case against Fidelity for tortious interference with contract. The two cases are consolidated for trial.

Five of Fidelity's claims remain for trial: fraudulent concealment (Count I) brought on Fidelity's own behalf against the Intercounty defendants and Hargrove; breach of fiduciary duty (Count II) brought as assignee and/or subrogee of the escrow beneficiaries against New Intercounty and INTIC, Peloza, Cornell and Hargrove as alter egos of New Intercounty and/or ITI Enterprises; violation of the Illinois Title Insurance Act, 215 ILCS § 155/21(a) (Count VI), brought as assignee and/or subrogee of the escrow beneficiaries against the Intercounty defendants and Hargrove; unjust enrichment (Count VII) brought as assignee and/or subrogee of the escrow beneficiaries against the Stewart defendants; and conversion (Count VIII) brought as assignee and/or subrogee of the escrow beneficiaries against New Intercounty and Hargrove. The counterplaintiffs have seven pending claims: breach of contract brought by INTIC against Fidelity (Counts III and IV); breach of fiduciary duty (Count V) brought by INTIC and New Intercounty against Fidelity and Simonton; fraud (Count VII) brought by INTIC, New Intercounty, INTIC Holding and Peloza against counterdefendants; fraud (Counts VIII and IX) brought by INTIC, New Intercounty and INTIC Holding against counterdefendants; and negligent misrepresentation (Count X) brought by INTIC, New Intercounty, INTIC Holding against Fidelity. Stewart has a claim for tortious interference with contract against

Fidelity. All other claims have been dismissed or defaulted. All parties move *in limine* to bar evidence at trial.

## DISCUSSION

### I.     Standard of Review

The background of these cases is discussed in the court's orders addressing the parties' summary judgment motions. *See Fidelity Nat'l Title Ins. Co. of New York v. Intercounty Nat'l Title Ins. Co.*, 2002 WL 1466806 (N.D. Ill. July 8, 2002); *Fidelity Nat'l Title Ins. Co. of New York v. Intercounty Nat'l Title Ins. Co.*, 2001 WL 1414517 (N.D. Ill. Nov. 13, 2001). Evidence is excluded on a motion *in limine* only if the evidence is clearly inadmissible for any purpose. *See Hawthorne Partners v. AT&T Technologies*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). Motions *in limine* are disfavored; admissibility questions should be ruled upon as they arise at trial. *Id.* Accordingly, if evidence is not clearly inadmissible, evidentiary rulings must be deferred until trial to allow questions of foundation, relevancy and prejudice to be resolved in context. *Id.* at 1401. Denial of a motion *in limine* does not indicate evidence contemplated by the motion will be admitted at trial. Instead, denial of the motion means the court cannot or should not determine whether the evidence in question should be excluded before trial. *United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989).

### II.     Fidelity's Motions *in Limine*

### A.     Insurance Coverage

Fidelity moves to bar evidence relating to its insurance coverage. The Intercounty defendants do not object to the extent Fidelity seeks to bar reference to its insurance as proof of wrongdoing or as a possible source of compensation. Rather, the Intercounty and Stewart defendants argue that

3

evidence relative to Fidelity's insurance claim may be relevant to the disputed issue of control over the escrow accounts. The Stewart defendants further claim evidence relating to Fidelity's insurance coverage may be used to refute Fidelity's possible arguments.

Federal Rule of Evidence 411 provides:

Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership or control, or bias or prejudice of a witness.

Rule 411 was adopted to address the concern that "knowledge of the presence or absence of liability insurance would induce juries to decide cases on improper grounds." Advisory Committee Notes to Fed. R. Evid. 411. Although the Intercounty defendants' argument tracks the language of the rule, they fail to offer evidence that Fidelity made any statement to its insurance carrier bearing on the issue of control over the escrow accounts. Similarly, the Stewart defendants claim that Fidelity "may have made statements or taken positions inconsistent with its positions in this action," but fail to provide any evidence of Fidelity's purported statements or inconsistent positions. Stewart Response at 2. The Intercounty defendants acknowledge that Fidelity was not forthcoming with this information during discovery. Intercounty Response at 2. This motion is predicated on speculation. Trial is not the appropriate forum to conduct a potentially prejudicial fishing expedition. Therefore, Fidelity's motion to exclude insurance coverage evidence is meritorious.

The Stewart defendants' other arguments lack merit. They claim that evidence of Fidelity's insurance coverage is necessary to rebut theoretical arguments by Fidelity that: (1) Stewart "would have acted the same as Fidelity" in allowing a deficiency in New Intercounty's escrow account in 2000; and (2) Stewart considered "purchasing title reinsurance in the early 1990s." Stewart

4

Response at 2. This argument is also speculative and not based on the issues framed in the pretrial order or Fidelity's trial brief. The Stewart defendants implicitly acknowledge that any evidence offered by Fidelity to show Stewart considered purchasing reinsurance is inadmissible under Rule 411 as it would "suggest negligent behavior or other wrongdoing." *Id.* Absent evidence supporting an exception to Rule 411, Fidelity's motion to bar evidence relating to its insurance coverage must be granted.

**B.     Frank Casillas**

Fidelity moves to bar former Illinois Department of Financial Institutions ("Department") director Frank Casillas from testifying at trial, claiming his testimony would violate a Department confidentiality regulation. Section 8100.3000 of the Illinois Administrative Code provides:

> Information or documents obtained by employees of the Department in the course of any examination, audit, visit, registration, certification, review, licensing or investigation pursuant to the Act, shall, *unless made a matter of public record,* be deemed confidential. Employees are hereby prohibited from making disclosure of such confidential information or production of documents or any other non-public records of the Department or other governmental agency, unless the Director or the Director's authorized representative authorizes the disclosure of such information or the production of such documents as not being contrary to the public interest.

(emphasis added). Fidelity did not object to Casillas' disclosure of alleged confidential information at his deposition. *See* Motion at Ex. A. Nor did Fidelity object or request a protective order when the Intercounty defendants attached Casillas' deposition transcript to their claim summary filed in September 2002. More importantly, Fidelity attached Casillas' entire deposition transcript to its motion. *Id.* Nor has Fidelity established it has standing to enforce Casillas' obligations under the confidentiality regulation. Moreover, Fidelity has already made public the information it seeks to shield from disclosure at trial. Under these circumstances, Fidelity's motion must be denied.

Fidelity's reliance on the court's opinion addressing the Stewart defendants' summary judgment motion does not change this result. In a footnote, the court stated:

> Fidelity cannot rely on Simonton's conversation with Harry Stirmwell at the Illinois Department of Financial Institutions to show reasonable inquiry. Stirmwell was prohibited from disclosing confidential financial information to third parties. *See* 215 Ill. Admin. Code § 8100.3000; Def. 56.1 Facts at ¶ 93.

*Fidelity*, 2001 WL 1414517, at *5 n. 2. Contrary to Fidelity's position, the court did not rule that Fidelity was precluded from relying on Simonton's conversation with Stirmwell at all. Rather, the court found that on summary judgment, Fidelity failed to show reasonable inquiry based upon Simonton's asking for information that Stirmwell was prohibited by regulation from releasing. *Id.* Therefore, Fidelity's motion to bar Frank Casillas' testimony must be denied.

## C. Assignments

Finally, Fidelity moves to bar evidence challenging the validity of approximately 1,900 assignments underlying Counts II, VI, VII and VIII. In its claim summary filed in September 2002, Fidelity recognized it is required to prove additional elements associated with its assignments. *See* Summary at 4. Specifically, Fidelity must show each escrow beneficiary intended to transfer to Fidelity all of the assignor's right, title or interest in the subject of the assignment. *Board of Managers of the Medinah on the Lake Homeowners Ass'n v. Bank of Ravenswood*, 295 Ill. App. 3d 131, 134-35, 692 N.E.2d 402, 405 (3rd Dist. 1998). Once established, an assignment places the assignee in the shoes of the assignor. *Board of Managers*, 295 Ill. App. 3d at 135, 692 N.E.2d at 405.

Contrary to Fidelity's position, the Intercounty and Stewart defendants are entitled to put Fidelity's proof to the test by challenging Fidelity's right to bring its claims for the benefit of the

escrow beneficiaries. Unlike the defendants in the controlling cases cited by Fidelity, the Intercounty and Stewart defendants do not claim the assignments fail for lack of consideration. *See Liu v. T&H Machine, Inc.*, 191 F.3d 790, 796 (7th Cir. 1996); *Elzinga & Volkers, Inc. v. LSSC Corp.*, 47 F.3d 879, 882 (7th Cir. 1995); *Matter of Assured Fastener Products Corp.*, 773 F.2d 105, 107 (7th Cir. 1985). Rather, the Intercounty and Stewart defendants accept the purported assignments on their face, but challenge Fidelity's right to pursue the relief sought in this action under the terms of the assignments, some of which are unexecuted. *See Board of Managers*, 295 Ill. App. 3d at 134, 692 N.E.2d at 405 ("When the assignment has not been reduced to writing, the parties' intentions must be determined based upon the instruments executed as well as the surrounding circumstances"). The Intercounty and Stewart defendants have the right to challenge Fidelity's ability to prove essential elements of its case. Therefore, Fidelity's motion to bar evidence contesting the assignments must be denied.

## III.     The Intercounty Defendants' Motions *in Limine*

### A.     Cornell's Prior Acts

The Intercounty defendants move to bar evidence relating to Cornell's prior bad acts, including evidence relating to sanctions imposed by this court for sending a threatening letter to Fidelity's counsel and then denying this conduct under oath; his 1996 guilty plea in state court for contempt of court; and his settlement of a fraud complaint brought by the Illinois Department of Professional Regulation. Rule 404(a) provides in relevant part:

> Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except . . . as provided in Rules 607, 608, and 609.

Fidelity responds by claiming Cornell's conduct falls within Rule 608 and 609.

7

Rule 608 authorizes the use of evidence concerning character for truthfulness or untruthfulness only when a witness' credibility is at issue. Specifically, Rule 608(b) grants the court discretion to allow cross-examination as to specific instances of bad conduct that may be probative of truthfulness or untruthfulness.

The Intercounty defendants do not assert that Cornell's conduct lacks probative value on the issue of credibility. Rather, they argue the probative value of Cornell's prior acts is substantially outweighed by the danger of unfair prejudice, and therefore prior bad act evidence should be excluded under Rule 403. However, the court cannot make this determination until it hears Cornell's testimony on direct examination. If Cornell's testimony contradicts Fidelity's evidence, the jury will be called on to resolve the inconsistencies based on credibility. The probative value of Cornell's prior bad acts, including his conduct during this litigation, to impeach his credibility potentially outweighs the danger of unfair prejudice. If Cornell does not testify, his credibility will not be at issue and evidence of his prior acts is inadmissible under Rule 404(a). The Intercounty defendants' motion must be denied as premature. However, Fidelity shall not refer to bad acts directly or indirectly in the jury's presence before and unless the court rules this evidence is admissible.

## B.     Personal Expenses and Investments

The Intercounty defendants move to bar evidence that Peloza and Cornell drafted checks from corporate accounts to pay for personal expenses and investments, including Peloza's investment in a casino. In their motion, they acknowledge that this evidence is relevant to Fidelity's alter ego claim in Count II. *See* Motion at 1, *citing Fidelity*, 2002 WL 1466806, at *7-8. Nevertheless, they claim that Fidelity should be barred from discussing the details of the transactions because the jury may improperly use this evidence to find that the Intercounty defendants received

8

ill-gotten gains from the escrow accounts at issue. Alternatively, the Intercounty defendants offer to stipulate to the transactions to prevent Fidelity from introducing this evidence at trial.

Fidelity is not required to accept the Intercounty defendants' offer to stipulate. *See Fryer v. United States*, 243 F.3d 1004, 1010 (7th Cir. 2001), *quoting United States v. Allen*, 798 F.2d 985, 1001 (7th Cir. 1986)("a party is not required to accept a judicial admission of his adversary, but may insist on proving the fact"). Instead, Fidelity may offer evidence of the transactions "as long as the probative value of the proof still exceeds the prejudicial effect, taking into account the offer to stipulate." *Allen*, 798 F.2d at 1102. Contrary to the Intercounty defendants' position, a reasonable jury could infer that the Intercounty defendants participated in the alleged escrow Ponzi scheme with ITI Enterprises based on the improper transfer of funds. *See Fidelity*, 2002 WL 1466806, at *5. Therefore, the Intercounty defendants have not established the probative value evidence that Peloza and Cornell misused corporate funds is substantially outweighed by unfair prejudice.

Nor have the Intercounty defendants established the probative value of Peloza's casino investment is substantially outweighed by its prejudicial effect. According to the Intercounty defendants, media coverage in February regarding the proposed casino's ties to organized crime "raises a serious specter of jury prejudice toward Ms. Peloza, and by extension to the other" Intercounty defendants. Motion at 4. As the Intercounty defendants concede, the media reports did not mention Peloza. Motion at 3-4. Nor has media coverage been shown pervasive or recent enough to raise the likelihood of prejudice.[1] Therefore, the Intercounty defendants' motion must be denied.

---

[1] Because of the parties' continuing failure to submit objective jury instructions and acceptable verdict forms, trial has been delayed indefinitely.

**C. Security Deposit**

The Intercounty defendants move to bar evidence relating to a statutory security deposit posted with the Illinois Department of Financial Security. Specifically, the Intercounty defendants seek to prevent Fidelity from introducing evidence suggesting that they improperly pledged the statutory security deposit as collateral for a personal loan. According to the Intercounty defendants, Fidelity's ambiguous evidence "has no relevance to the proof of any of the parties' claims in this case." Motion at 1-2.

To the contrary, evidence showing that the Intercounty defendants used the statutory security deposit as collateral for a personal loan is relevant to Fidelity's Illinois Title Insurance Act claim. The Illinois Title Insurance Act prohibits "untrustworthiness or incompetence in transacting business in a manner that endangers the public." 215 ILCS § 155/21(a). Fidelity intends to show the Intercounty defendants' untrustworthiness or incompetence through their personal use of funds pledged as security for the public. The purported ambiguity of the bank records on this issue goes to the weight of the evidence, not its admissibility. Moreover, potential jury confusion created by the admissibility of this evidence may be negated by appropriate cautionary instructions. Under these circumstances, the Intercounty defendants' motion must be denied.

**D. Attorney-Client Privilege**

The Intercounty defendants move to bar Fidelity's witnesses from testifying to matters on which they invoked the attorney-client privilege during their depositions. Fidelity responds that the court should wait until trial to resolve this issue.

Parties may not assert a privilege as a shield against discovery and then convert their invocation of the privilege to a sword by testifying about purportedly privileged matters at trial. *See*

10

*Harris v. City of Chicago*, 266 F.3d 750, 754 (7th Cir. 2001), *quoting McGahee v. Massey*, 667 F.2d 1357, 1362 (11th Cir. 1982)("A defendant cannot have it both ways . . . [He may not] testify in attack . . . and at the same time seek refuge behind the shield of [privilege]"). However, the Intercounty defendants fail to provide any specific information regarding the subject matter of the purported privileged testimony. On this inadequate record, the court cannot assess whether the Intercounty defendants would be unfairly prejudiced if Fidelity's witnesses waive the attorney-client privilege at trial. If the Intercounty defendants obtained information on the privileged matters from other reliable sources, they may not suffer any harm. On the other hand, if Fidelity's witnesses are the only source of critical information, or their testimony impacts the credibility of the Intercounty defendants' witnesses, the prejudicial nature of the testimony may warrant an order barring the use of the purportedly privileged evidence. The Intercounty defendants' motion must be denied.

### E.    William J. Pollard's Expert Testimony

Finally, the Intercounty defendants move to bar Fidelity's liability expert, William J. Pollard, from offering testimony as to Peloza and Cornell's knowledge and beliefs regarding the state of Old Intercounty's escrow account. As the Intercounty defendants point out, the court previously found that Pollard's testimony as to what the Stewart defendants knew or should have known regarding the escrow account lacked foundation. *Fidelity*, 2001 WL 14145178, at *6. In its response, Fidelity fails to provide any foundation for Pollard's anticipated testimony. Therefore, the Intercounty defendants' motion is meritorious.

## IV.    The Stewart Defendants' Motions *in Limine*

### A.    Theresa Crane

The Stewart defendants move to bar Theresa Crane from testifying because Fidelity failed

to disclose her in its initial and supplemental Rule 26 disclosures. Rule 26 requires a party to

provide "the name and if, known, the address and telephone number of each individual likely to have

discoverable information that the disclosing party may use to support its claims or defenses . . . ,

identifying the subjects of the information." Fed. R. Civ. P. 26(a)(1)(A). A party must supplement

or amend its disclosures if it learns that the information disclosed or the response is "incomplete or

incorrect and if the additional corrective information has not otherwise been made known to the

other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1). To ensure

compliance with these discovery requirements, Rule 37 provides "[a] party that without substantial

justification fails to disclose information required by Rule 26(a) or 26(e)(1) . . . is not, unless such

failure is harmless, permitted to use as evidence at a trial . . . any witness or information not so

disclosed." Fed. R. Civ. P. 37(c)(1). "[T]he sanction of exclusion is automatic and mandatory

unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless."

*Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998).

Fidelity claims it was justified in not disclosing Crane because she was identified as a

possible witness during discovery. The advisory committee notes to Rule 26(e) provide in relevant

part:

> There is, however, no obligation to provide supplemental or corrective information
> that has been otherwise made known to the parties in writing or during the discovery
> process, as when a witness not previously disclosed is identified during the taking of
> a deposition . . .

During her deposition, Claire Allen identified Crane as a person who may have knowledge of Old Intercounty's real estate closing procedures. Response at Ex. C. Crane also was identified in defendant Michel Thyfault's initial disclosures under Rule 26(a). Motion at Ex. B. Under these circumstances, Fidelity was not obligated to supplement its Rule 26(a) disclosures to identify Crane. See *Weiland v. Linear Construction*, Ltd., 2002 WL 31307622, at *2-3 (N.D. Ill. Oct. 15, 2002)(Rule 26(e) duty to supplement initial disclosures was satisfied when other party learned of witnesses during discovery). Nor has any resulting prejudice been shown. Therefore, Fidelity's non-disclosure of Crane was both justified and harmless. The Stewart defendants' motion lacks merit.

**B.      Documents Produced After Close of Discovery**

The Stewart defendants move to exclude Fidelity's proposed trial exhibits nos. 336 and 337 pursuant to Rule 37(c)(1) because Fidelity produced the approximately 3,000 documents nearly one year after discovery closed. The exhibits must be excluded from evidence unless Fidelity shows its failure to produce the documents timely was either justified or harmless. *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996).

Fidelity has shown the failure to timely produce exhibits nos. 336 and 337 is harmless. The documents comprising exhibit no. 336 are Stewart title insurance polices. Stewart did not object to the authenticity of these documents in the pretrial order. Moreover, Fidelity claims exhibit no. 337 does not relate to its unjust enrichment claim against Stewart. Rather, exhibit no. 337 relates to Fidelity's claims against the Intercounty defendants, who have not objected to the late production of these documents. Under these circumstances, Fidelity's tardy production is harmless and the Stewart defendants' motion must be denied.

## C.    Bruce Burton's Expert Testimony

The Stewart defendants move to bar Fidelity's damage expert Bruce Burton from testifying regarding the future of its business relationship with Old Intercounty. In response, Fidelity points out that the Stewart defendants' damages expert William B. Metzdorff based his calculations on the assumption that Stewart's business relationship with Old Intercounty would continue until the end of their contract term in November 2009. Fidelity claims that Burton's testimony challenges this assumption underlying Metzdorff's damage calculations.

Just as Metzdorff was entitled to assume the Stewart defendants' relationship with Old Intercounty would have continued until November 2009, Burton was entitled to assume it would have ended earlier based on his review of the evidence. Disputes between the parties' experts about assumptions and conclusions are appropriate grounds for exploration on direct and cross-examination. The weight and probative value of expert analyses are for the jury to determine. *See Medcom Holding Co. v. Baxter Travenol Laboratories*, 106 F.3d 1388, 1400 (7th Cir. 1997). Therefore, the Stewart defendants' motion must be denied.

## D.    William J. Pollard's Expert Testimony

The Stewart defendants move to bar Pollard from testifying as an expert. However, they do not contest Pollard's testimony to the extent he summarizes the escrow account transactions. Rather, they seek to bar any testimony: (1) regarding the propriety of the escrow account transactions; (2) based on inadmissible evidence; and (3) concluding that a $54 million shortage in the Old Intercounty escrow account was shifted to the New Intercounty escrow account. Hargrove joins in Stewart's motion.

14

Fidelity bears the burden of establishing the admissibility of Pollard's testimony by a preponderance of the evidence. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 581 (1993). Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise.

As the Stewart defendants point out, experts are not allowed to testify to legal conclusions. *Harbor Ins. Co. v. Continental Bank Corp.*, 922 F.2d 357, 367 (7th Cir. 1990); *Panter v. Marshall Field & Co.*, 646 F.2d 271, 294 n. 6 (7th Cir. 1981)("It is not for witnesses to instruct the jury as to applicable principles of law, but the judge"). Nevertheless, experts may testify to sound professional standards and identify departures from them. *See West v. Waymire*, 114 F.3d 646, 652 (7th Cir. 1997).

The record does not reveal whether the professional standards applicable to escrow accounts are within Pollard's expertise. In any event, much of Pollard's opinion is based on inferences drawn from underlying records rather than on his accounting expertise. Specifically, Pollard opines that the escrow cash shortages were caused by improper transfers and the Stewart defendants knew or should have known of the escrow cash shortages. Motion at Ex. A. The ultimate question for the jury to resolve is whether Old Intercounty perpetrated a Ponzi scheme that resulted in the escrow cash shortages under the Stewart defendants' watch. *See* Fidelity's response to Stewart's motion to bar evidence relating to Old Intercounty's defeasance program at 3. Pollard is no more qualified than the jury to answer this question.

Apparently recognizing this problem, Fidelity's response focuses exclusively on the objective, rather than subjective, nature of Pollard's work in tracing escrow funds. Federal Rule of Evidence 703 is explicit that materials on which an expert bases an opinion need not be admissible, provided that it is first established that a responsible expert relies on similar materials in formulating a professional opinion and the opposing party has had a chance to review the materials before trial. *Peabody Coal Co. v. Director, Office of Workers' Comp. Programs*, 165 F.3d 1126, 1128 (7th Cir. 1999). The Stewart defendants fail to provide evidence that these conditions cannot be satisfied. Therefore, the Stewart defendants' motion to bar Pollard's testimony on this basis must be denied.

Nevertheless, Pollard may not testify regarding the propriety of the transactions or whether the Stewart defendants knew or should have known of the escrow shortages. This is not a case like *Maiz v. Virani*, 253 F.3d 641, 666-67 (11th Cir. 2001), where the expert's opinion was based on assumptions developed by counsel. Pollard's report does not assume comparable facts, but rather unequivocally concludes that the escrow transactions at issue were improper and the Stewart defendants knew or should have known about the shortages. Motion at Ex. A. "'[T]estimony that does little more than tell the jury what result to reach is unhelpful and thus inadmissible.'" *Dahlin v. Evangelical Child and Family Agency*, 2002 WL 31834881, at *3 (N.D. Ill. Dec. 18, 2002), *quoting Woods v. Lecureaux*, 110 F.3d 1215, 1221 (6th Cir. 1997).

Finally, the Stewart defendants take issue with Pollard's conclusion that a $54 million shortage in the Old Intercounty escrow accounts was transferred to the New Intercounty escrow accounts. Specifically, the Stewart defendants claim Pollard only reviewed liabilities, and not assets, in reaching his conclusion. The Stewart defendants' objection to Pollard's conclusion is more appropriately the subject of cross-examination. *See Stutzman v. CRST, Inc.*, 997 F.2d 291, 296 (7th

16

Cir. 1993)("Experience and knowledge establish the foundation for an expert's testimony; the accuracy of such testimony is a matter of weight and not admissibility"). The Stewart defendants do not challenge Pollard's qualifications as an expert. Therefore, the motion must be denied on this basis.

## E.    Defeasance Program

Finally, the Stewart defendants move to bar all evidence relating to Old Intercounty's defeasance program. According to the Stewart defendants, evidence relating to Old Intercounty's defeasance program is irrelevant to Fidelity's unjust enrichment claim as the purported subrogee and/or assignee of the escrow beneficiaries. Fidelity counters by asserting, "Stewart knew that Old Intercounty was in desperate financial straits (indeed, it was insolvent), and knew of Old Intercounty's 'improper escrow transfers,' and yet Stewart did not blow the whistle on Old Intercounty, but instead exercised its great leverage to wring (among other concessions) payment from Old Intercounty on defeasance losses that Stewart would otherwise have had to pay itself." Response at 4. In addition, Fidelity argues the defeasance program is relevant to the Stewart defendant's tortious interference claim because the parties' declining relationship under the program calls Metzdorff's assumptions about the continuation of Stewart's relationship with Old Intercounty into question. The Stewart defendants concede that their communications with Old Intercounty over the defeasance program were "sometimes acrimonious." Motion at 5. Based on this record, evidence concerning Old Intercounty's defeasance program is not clearly inadmissible. Therefore, the Stewart defendants' motion must be denied.

## V. Hargrove's Motions *in Limine*

### A. Name Confusion

Hargrove moves to bar counsel and witnesses from using the phrase "Hargrove and Capriotti" at trial. According to Hargrove, use of the phrase "will potentially create prejudicial confusion in the minds of the jurors, in lumping [he and Capriotti] together." Motion at 2. However, Hargrove fails to demonstrate that it is inappropriate for counsel to refer to him in connection with Capriotti. The jury will be instructed that they must consider each claim against each party separately. Accordingly, Hargrove's motion must be denied.

### B. Criminal Investigation

Hargrove moves to bar evidence that he is the subject of an ongoing criminal investigation. In his answer and at his deposition, Hargrove invoked his Fifth Amendment privilege against self-incrimination. According to Fidelity, it "has every reason to expect that Hargrove will take the Fifth Amendment when called to testify at trial." Response at 2. Fidelity claims the right to test Hargrove's assertion of the privilege at trial by questioning him about an ongoing criminal investigation. Fidelity's argument is frivolous.

Fidelity fails to establish an evidentiary basis for questioning Hargrove about an ongoing criminal investigation. Indeed, Fidelity does not challenge the validity of Hargrove's assertion of the privilege against self-incrimination. *See In re Folding Carton Antitrust Litigation*, 609 F.2d 867, 871 (7th Cir. 1979)("When a witness can demonstrate any possibility of prosecution that is more than fanciful he has demonstrated a reasonable fear of prosecution sufficient to meet constitutional muster"). Rather, Fidelity focuses exclusively on adverse inferences to be drawn from Hargrove's invocation of the privilege. Although an adverse inference may be drawn by a witness' assertion of

18

the Fifth Amendment in a civil case, the court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. *In re High Fructose Corn Syrup Antitrust Litigation*, 295 F.3d 651, 663 (7th Cir. 2002). A party may argue the adverse inference without pursuing questions about an ongoing criminal investigation. The probative value of an ongoing criminal investigation is substantially outweighed by the danger of unfair prejudice, confusion of the issues and misleading the jury. Hargrove's motion must be granted.

## C.     Statute of Limitations

Based on the statute of limitations, Hargrove moves to bar Fidelity from presenting evidence occurring prior to September 15, 1995 on its fraudulent concealment. Hargrove fails to cite any support for his position that evidence outside the limitations period is automatically irrelevant. To the contrary, prior conduct that is not actionable may be relevant for other purposes. *See, e.g., United Air Lines, Inc. v. Evans*, 431 U.S. 533, 558 (1977)(acts occurring outside the filing period "may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences"). Hargrove fails to establish events occurring prior to September 1995 are irrelevant to Fidelity's claims. Therefore, his motion must be denied.

## VI.     Simonton's Motion *in Limine*

Simonton moves to bar evidence relating to audiotapes produced by the Intercounty defendants after discovery closed. The Intercounty defendants have not listed the challenged audiotapes as exhibits in the pretrial order. Motion at 1. Nor did the Intercounty defendants respond

19

to Simonton's motion. To the extent Simonton seeks to preclude the Intercounty defendants from using the audiotapes at trial, his motion will be granted.

However, Simonton's motion must be denied as to the Stewart defendants because they listed the audiotapes as exhibits in the pretrial order. Motion at 1. As the Stewart defendants point out in their response, Simonton fails to provide any basis for precluding them from introducing the audiotapes at trial simply because of the Intercounty defendants' tardy disclosure. Therefore, Simonton's motion must be denied as to the Stewart defendants.

## CONCLUSION

Fidelity's motion to bar references to their insurance coverage, the Intercounty defendants' motion to exclude Pollard's testimony regarding others' knowledge or state of mind and Hargrove's motion to bar evidence regarding an ongoing criminal investigation are granted. The Stewart defendants' motion to bar Pollard's testimony and Simonton's motion to exclude the audiotapes are granted in part and denied in part. All remaining motions *in limine* are denied.

April 29, 2003

ENTER:

Suzanne B. Conlon
Suzanne B. Conlon
United States District Judge