# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5658 | **DATE** | 4/26/2004 |
| **CASE TITLE** | Fidelity National Title vs. Intercounty National | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion, defendants Stewart parties' and Jack Hargrove's motions for a judgment as a matter of law are hereby denied in their entirety. Enter Memorandum Opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | APR 27 2004 | |
| | Notified counsel by telephone. | | date docketed | 739 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| | MW | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FIDELITY NATIONAL TITLE )
INSURANCE COMPANY OF )
NEW YORK, a New York corporation, )
)
Plaintiff, )
)
v. ) No. 00 C 5658
)
INTERCOUNTY NATIONAL TITLE )
INSURANCE COMPANY, et al., )
)
Defendants. )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Stewart Information Services Corporation's, Stewart Title Guarantee Company's, and Stewart Title Company's (collectively referred to as "Stewart parties") motion for a judgment as a matter of law on the claims brought against them by Plaintiff Fidelity National Title Insurance Company of New York ("Fidelity"). This matter is also before the court on Defendant Jack Hargrove's ("Hargrove") motion for a judgment as a matter of law on the claims brought against Jack Hargrove by Fidelity and on Fidelity's motion for judgment as a matter of law on the tortious interference with contractual relations

1

counterclaim brought against Fidelity by Stewart Title Guarantee Company. For the reasons stated below we deny all three motions for judgment as a matter of law in their entirety.

## LEGAL STANDARD

Federal Rule of Civil Procedure 50(a) states the following:

**a) Judgment as a Matter of Law.**

**(1)** If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

**(2)** Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.

Fed. R. Civ. P. 50(a). The standard used to determine whether to grant a motion for judgment as a matter of law "mirrors" the standard for a motion for summary judgment. *Murray v. Chicago Transit Authority*, 252 F.3d 880, 886-87 (7th Cir. 2001). Thus, for a Rule 50(a) motion the court must "examine the record in its entirety, [and] view the evidence in the light most favorable to the party against whom judgment was granted." *Id.*

## DISCUSSION

### I. Unjust Enrichment Claims

The Stewart parties seek a judgment as a matter of law on the unjust enrichment claims brought against them.

#### A. Detriment

The Stewart parties correctly state that Fidelity, acting as a subrogee, is required to prove a detriment to the New Intercounty 2000 payees, rather than a detriment to Fidelity. Fidelity incorrectly argues in its answer brief that Fidelity has suffered a detriment and Fidelity's only argument relates to the costs incurred by Fidelity due to the payouts to the New Intercounty 2000 payees. Fidelity's reliance on the quoted standard at the beginning of Judge Conlon's November 2, 2001 ruling on motions for summary judgment is misplaced. A look at the substantive meaning belying the entire ruling shows that, for the remaining unjust enrichment claims, Fidelity must show a detriment to the New Intercounty 2000 payees. In the November 2 opinion, in a section dealing with Fidelity's claim in its own right, Judge Conlon begins by stating that Fidelity must show a benefit to Stewart "to Fidelity's detriment." (p. 12). However, in the section of the ruling dealing with Fidelity's unjust enrichment claim in its own right Judge Conlon finds that "Fidelity

3

failed to engage in reasonable due diligence" and that "Fidelity's conduct precludes it from establishing Stewart's retention of a benefit is unjust" thus foreclosing Fidelity from pursuing an unjust enrichment claim in its own right. ( p. 12). In the next section of the ruling, dealing with Fidelity's claim as a subrogee or assignee, which is the claim that is still alive in this case, Judge Conlon specifically stated that "Fidelity must demonstrate the *subrogors suffered a detriment* and their loss is traceable to Stewart's liability as underwriter before September 1995." ( p. 13)(emphasis added). Thus, it is clear from Judge Conlon's opinion that the New Intercounty 2000 payees, who are the subrogors in this case, are the relevant parties for assessing a detriment for the unjust enrichment claim.

Despite Fidelity's failure to recognize the proper application of the unjust enrichment standard we cannot, even accepting the Stewart parties' standard, find for the Stewart parties as a matter of law. There is a genuinely disputed issue as to whether Fidelity has made a sufficient showing of a detriment to the New Intercounty 2000 payees. There was sufficient evidence presented regarding the alleged shortfalls in the escrow accounts in Old Intercounty and sufficient evidence regarding the connection of those shortfalls and the eventual refusal of payment by New Intercounty to the 2000 payees that this issue should go to the jury.

## B. Benefit

The Stewart parties argue that Fidelity has not shown that the Stewart parties received a benefit. However, the Stewart parties received a benefit when they were relieved of the liability for the Old Intercounty escrow account shortfalls. Although, Judge Conlon held that the unjust enrichment claim is essentially seeking restitution which sounds as a claim in law, the action being equitable in nature is flexible and is intended to prevent unfairness and injustice. Stewart cites no controlling precedent that holds that the extinguishment of Stewart's liability for the Old Intercounty escrow shortfalls would not constitute a benefit for the purposes of an unjust enrichment claim. Also, the Stewart parties did not object to a jury instruction indicating that the extinguishment of a defendant's liability constitutes a benefit. *See Reich v. Continental Cas. Co.*, 33 F.3d 754, 756 (7th Cir. 1994)( recognizing theory of a "'negative unjust enrichment,' consisting of the unjust avoidance of a loss.").

## C. Unjust Retention

The Stewart parties argue that their alleged retention of the benefit secured by the extinguishment of its liability is not unjust. The Stewart parties first argue that they received the benefit in good faith. We find that there is sufficient evidence to make this assertion a genuinely disputed issue for the jury. Generally, a plaintiff

bringing an unjust enrichment claim is seeking to recover a benefit that "proceeded directly from him to the defendant." *HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989). However, where a plaintiff is seeking "recovery of a benefit that was transferred to the defendant by a third party" the benefit would be unjust if "(1) the benefit should have been given to the plaintiff, but the third party mistakenly gave it to the defendant instead . . ., (2) the defendant procured the benefit from the third party through some type of wrongful conduct . . . or (3) the plaintiff for some other reason had a better claim to the benefit than the defendant." (citations omitted).

In this case Fidelity acting as the subrogee of the New Intercounty 2000 payees is not seeking to recover a benefit that proceeded directly to it from Stewart. Thus, the three alternatives for an indirect benefit scenario are pertinent in this case. The first alternative clearly does not apply because Old Intercounty did not mistakenly bestow the benefit on the Stewart parties of extinguishing their liability. We cannot, however, find as a matter of law that the second alternative does not apply in this case. The court in *HPI Health Care Services, Inc.* indicates that the defendant must have "procured the benefit from the third party through some type of wrongful conduct." 545 N.E.2d at 679. This language would appear to indicate that the defendant must have actively attempted to procure the benefit and that there is

some type of wrongful intent by the defendant in procuring the benefit. However, in *Midcoast Aviation, Inc. v. General Electric Credit Corp.* the Seventh Circuit addresses the three alternatives in *HPI Health Care Services, Inc.* and the Seventh Circuit concluded that the "requirement of 'wrongfulness' does not mean that a defendant must perform illegal acts or manifest signs of moral depravity. . .[but rather that] [i]t means merely that a defendant does something unjust." 907 F.2d 732, 738 n.3 (7th Cir. 1990). The Court in *Midcoast Aviation, Inc. v. General Electic Credit Corp.* also concluded that the alternatives listed in *HPI Health Care Services, Inc.* for an indirect benefit are not an exhaustive list of possible scenarios that could involve an unjust retention of a benefit. *Id.*

Therefore, in this case there is sufficient evidence to create a jury question as to whether the Stewart parties had knowledge of the escrow deficiencies in Old Intercounty and whether the Stewart parties acted in bad faith in failing to prevent or expose the deficiencies. Thus, there is evidence that could be construed in a manner that would merit a finding that Stewart did something unjust and that the retention of the benefit retained is unjust.

In regards to the third prong of *HPI Health Care Services, Inc.* the New Intercounty 2000 payees clearly have a better right to the benefit than does the Stewart parties. It was the payees who put their money into the escrow accounts and

the money put in belonged to them. The Stewart parties first argue that such a conclusion is not technically correct because of the manner in which the escrow arrangement works. However, it is the nature of the escrow setup that causes any shortfalls to trickle down to the end users. Therefore, there is nothing unjust or unfair in tracing the lack of payment to the New Intercounty 2000 payees back to the Stewart parties whose liability was extinguished by payments to payees of Old Intercounty using the funds put into the escrow account by New Intercounty 2000 payees.

The Stewart parties also argue that the detriment to the New Intercounty 2000 payees was a lack of repayment by New Intercounty and on the other hand, the benefit to the Stewart parties was an extinguishment of debt. The Stewart parties argue that the lack of repayment is not reverse of the extinguishment of debt. The Stewart parties argue that the detriment to the New Intercounty 2000 payees and the benefit to the Stewart parties do not match up. We find that this argument is based upon an overly technical view of the situation in this case. The doctrine of unjust enrichment is an equitable doctrine. Even though Judge Conlon ruled that the unjust enrichment claims in this case seeking restitution sounds more in law rather than equity, the equitable principles that guide the doctrine of unjust enrichment still apply. The equitable principles are intended ultimately to promote fairness and

8

justice. They allow for flexibility to promote those goals. In this case there is nothing unfair in tracing the detriment to the New Intercounty 2000 payees back to the Stewart parties in an indirect fashion. The courts in *Midcoast Aviation, Inc. v. General Electic Credit Corp.* and *HPI Health Care Services, Inc.* have recognized that an unjust enrichment claim can be based upon an indirect benefit. 907 F.3d at 738 n.3; 545 N.E.2d at 67.

Finally, as the court noted in *Midcoast Aviation, Inc. v. General Electric Credit Corp.*, the alternatives listed in *HPI Health Care Services, Inc.* are not an exhaustive list. Even if one of the three alternatives did not specifically apply in this case, the facts in the instant case are the type of indirect benefit that can support an unjust enrichment claim. There is evidence upon which a jury could find that the New Intercounty 2000 payees were not repaid the money that they put into the escrow accounts and that the Stewart parties, who stood watch over and insured the escrow accounts when funds were allegedly misappropriated, avoided any liability by turning a blind eye to the misconduct until they were no longer liable for the losses.

### D. Subrogation and Assignment

The Stewart parties also challenge Fidelity's assertion that it can proceed as a

subrogee or assignee of the New Intercounty 2000 payees. Judge Conlon touched on this issue in her rulings stating that "Fidelity can assert an unjust enrichment claim as subrogee and assignee of the escrow beneficiaries." (Conlon opinion 11/2/01 p. 15). The Stewart parties have not provided the court with any new arguments or evidence that convince us that Fidelity cannot proceed as the subrogee and assignee of the New Intercounty 2000 payees. We find that the issues concerning subrogation, such as whether Fidelity is entitled to proceed by way of equitable subrogation, is a legal issue for the court to determine and we find that Fidelity can proceed as the subrogee and assignee of the New Intercounty 2000 payees.

### E. Specificity of Damages

The Stewart parties contend that even if the Stewart parties are found liable by the jury, Fidelity has not presented sufficient evidence for the jury to determine damages. If liability is found, there is no requirement that Fidelity present evidence sufficient for the jury to trace every dollar owed to a New Intercounty 2000 payee back to Defendants' wrongdoing. This is particularly true in a situation such as in the instant case where funds were deposited into a common escrow account and taken out later. Fidelity has presented sufficient evidence for damages, if any, to be determined by the jury without resorting to speculation.

### F. SISCO and Stewart Title

SISCO and Stewart Title argue that there is little or no evidence that they were directly involved in any of the misconduct alleged by Fidelity. They point out that all of the guarantee letters at issue were issued by Stewart Guarantee. However, we find that there is sufficient evidence of SISCO's and Stewart Title's involvement in the alleged scheme to allow this issue to go to the jury and to allow the jury to determine if there is liability on the part of Stewart Guaranty, Stewart Title, or SISCO, and if so, the amount of damages against each Stewart party.

## II. Claims against Hargrove

Hargrove seeks a judgment as a matter of law on all three claims brought against him by Fidelity.

### A. Piercing Corporate Veil

Hargrove argues that the court cannot allow Fidelity to pierce the corporate veil. Under Illinois law, in order to pierce the corporate veil a plaintiff must establish: 1) "such unity of interest and ownership that the separate personalities of the corporation and the individual . . . no longer exist," and 2) the "circumstances [are] . . . such that adherence to the fiction of separate corporate

11

existence would sanction a fraud or promote injustice." *Hystro Products, Inc. v. MNP Corp.*, 18 F.3d 1384, 1388-89 (7th Cir. 1994). In addressing the unity of interest prong, a court may consider factors such as: "(1) the failure to maintain adequate corporate records or to comply with corporate formalities, (2) the commingling of funds or assets, (3) undercapitalization, and (4) one corporation treating the assets of another as its own." *Id.* The plaintiff seeking to pierce the corporate veil bears "the burden of establishing that the corporation was so controlled and manipulated that it had become a mere instrumentality of another. . . ." *Chicago Florsheim Shoe Store Co. v. Cluett, Peabody & Co., Inc.*, 826 F.2d 725, 728 (7th Cir. 1987).

In this case, there is evidence that there was a unity of interest between Hargrove and Old Intercounty and New Intrecounty and evidence of Hargrove's control over Old Intercounty and New Intercounty. There is evidence indicating Hargrove's active involvement in the affairs of Old Intercounty and New Intercounty. For instance, sufficient evidence was presented that there were serious deficiencies in the escrow accounts both at Old Intercounty and New Intercounty and a removal of funds from the escrow account. Also, there is sufficient evidence regarding the lack of audits at Old Intercounty and finally, when there was an audit scheduled, there is evidence that Hargrove ordered an auditor to leave Old

Intercounty's offices. Another example is correspondence between Hargrove and Malcolm Morris. In one such correspondence by Malcolm Morris addressed to Hargrove, as Chairman of Intercounty Title Company of Illinois ("Old Intercounty"), Morris, in answer to Hargrove's request, advises Hargrove the amount that will be required to alleviate the escrow deficiencies. In addition, there is evidence that Hargrove was a major shareholder in Old Intercounty and Chairman of the Old Intercounty member and that the company was overwhelmingly insolvent. Another example is the fact that Hargrove put his personal funds into New Intercounty when the escrow shortages in order to cover the shortages to keep the business going. Hargrove argues that this only shows his honest intentions to remedy the situation, but we find it more likely that such efforts were to try and avoid liability on the part of Hargrove once the scheme had been discovered. Finally, when asked if he would answer any questions with respect to Old Intercounty, New Intercounty, Stewart Title, and Fidelity, Hargrove took the Fifth Amendment. When asked if there were any questions in the area of the subject matter of this lawsuit or the four companies mentioned above that Hargrove would not assert his Fifth Amendment rights, Hargrove responded in the negative. We are permitted to draw an adverse inference from his refusal to testify. *Daniels v. Pipefitters' Ass'n Local Union No. 597*, 983 F.2d 800, 802 (7th Cir. 1993). Based upon the evidence, including Hargrove's taking

of the Fifth Amendment, this court finds that Hargrove had a unity of interest with Old Intercounty, Hargrove exercised sufficient control over Old Intercounty, and Fidelity should be allowed to pierce the corporate veil.

### B. Illinois Title Insurance Act Claim

Hargrove indicated during oral arguments before this court that if the court allowed Fidelity to pierce the corporate veil then Hargrove's objections concerning the Illinois Title Insurance Act, 215 ILCS 155 *et seq*, claim were moot. As indicated above, we find that the circumstances in this case warrant allowing Fidelity to pierce the corporate veil. However, even if we did not allow Fidelity to pierce the corporate veil the arguments put forth by Hargrove concerning the Illinois Title Insurance Act claim are without merit.

Hargrove argues that 215 ILCS 155/21(a) does not apply to him. That section reads as follows:

> §§ 21. Regulatory action.
>
> (a) The Director may refuse to grant, and may suspend or revoke, any certificate of authority, registration or license issued pursuant to this Act if he determines that the holder of or applicant for such certificate, registration or license:
>
> (1) has intentionally made a material misstatement or fraudulent misrepresentation in relation to a matter covered by this Act;
>
> (2) has misappropriated or tortiously converted to its own use, or illegally withheld, monies held in a fiduciary capacity;

14

(3) has demonstrated untrustworthiness or incompetency in transacting the business of guaranteeing titles to real estate in such a manner as to endanger the public;

(4) has materially misrepresented the terms or conditions of contracts or agreements to which it is a party;

(5) has paid any commissions, discounts or any part of its premiums, fees or other charges to any person in violation of any State or federal law or regulations or opinion letters issued under the federal Real Estate Settlement Procedures Act of 1974; [FN1] or

(6) has failed to comply with the deposit and reserve requirements of this Act or any other requirements of this Act.

215 ILCS 155/21(a). Fidelity contends that Hargrove can be held liable for violating 215 ILCS 155/21(a) pursuant to 215 ILCS 155/25(a) which reads as follows: "(a) Any person or persons who violate the prohibitions or limitations of subsection (a) of Section 21 of this Act shall be liable to the person or persons charged for the settlement service involved in the violation for actual damages." 215ILCS 155/25(a).

Hargrove argues that the preamble statement in 215 ILCS 155/21(a) indicates that the section is only to be applied to a person seeking a "certificate of authority, registration or license issued pursuant to this Act." However, there is no specific restriction indicating that the section is limited as advocated by Hargrove. Hargrove also argues that the reference in 215 ILCS 155/25(a) to "person or persons" is intended to refer to a corporate entity that is seeking a certificate, registration, or

15

license. However, a reading of statute according to its plain meaning indicates that the statute 215 ILCS 155/25(a) applies to an individual person as well as a corporate entity. In addition 215 ILCS 155/25(b) addresses injunctive relief and specifically refers to a "title insurance company or a title insurance agent." This specific reference in subsection (b) of 215 ILCS 155/25 also indicates that the Illinois legislature intended to distinguish between persons that could be an individual or a corporation and certain corporations. Another indication that "person or persons" can refer to individual persons is the reference in 215 ILCS 155/21(a) to the "*holder* of or applicant for such certificate, registration or license." 215 ILCS 155/21(a)(emphasis added). In addition, a plain reading of the language in subsections 1 through 6 of 215 ILCS 155/21(a) indicates that the violative actions applies to both a corporation and an individual person. Therefore, we find that 215 ILCS 155/25(a) applies to Hargrove individually. We also find that the reference to "[a]ny person or persons who violate the prohibitions or limitations of subsection (a) of Section 21 of this Act" in 215 ILCS 155/25(a) refers to individuals or corporations.

### C. Breach of Fiduciary Duty Claim, Conversion Claim, Statute of Limitations

Hargrove seeks a judgement as a matter of law on the breach of fiduciary duty

16

claim. However, there is sufficient evidence that Hargrove was a majority stockholder, board member, and that Hargrove was actively involved in the affairs of Old Intercounty and New Intercounty and that there were serious deficiencies in the accounts of both Old Intercounty and New Intercounty. There is sufficient evidence that the 2000 payees had entrusted their own money to New Intercounty and that Hargrove, as the owner of Old and New Intercounty had a fiduciary duty to render the issue a genuine issue for the jury's consideration. Likewise, there are sufficient genuine factual issues in regards to the conversion claim to warrant the claim being taken to the jury. Also, Hargrove asserts that the claims against him are barred by the statute of limitations. This defense involves several genuine factual issues that should also be properly decided by the jury.

III. Counterclaim Against Fidelity

Fidelity moved for a judgment as a matter of law on the counterclaim against Fidelity brought by Stewart Guarantee. We shall provide only a concise written response to this motion because, unlike Defendants' motions for directed verdict which included extensive written briefing and oral arguments, Fidelity's motion for a judgment as a matter of law consisted solely of a short oral argument and a limited oral response. As stated in open court, we find that there is sufficient evidence

concerning issues such as Mr. Simonton's connections to Fidelity and the intentions and knowledge of Fidelity during the pertinent period. Therefore, we deny Fidelity's motion for a judgment as a matter of law on the counterclaim.

## CONCLUSION

Based on the foregoing analysis, we deny both of Defendants' motions for judgment as a matter of law in their entirety and we deny Fidelity's motion for judgment as a matter of law in its entirety.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: April 26, 2004